AVERY v. NEW YORK CENT. & H. R. R. Co.

(*Superior Court of Buffalo, General Term.* July 13, 1888.)

1. TRESPASS—MEASURE OF DAMAGES—INJURY TO LEASEHOLD INTEREST.
   In an action for injury to a leasehold interest in a hotel, where the evidence tends to show that defendant's wrongful acts have decreased plaintiff's business, and thus diminished the rental value of such leasehold interest, the measure of damages is the depreciation of such rental value.

2. SAME—DAMAGES TO REAL ESTATE—OPINION EVIDENCE.
   On the trial of such action, a witness who has known the property for 42 years, has been familiar with it for 32 years, and was its owner for 13 years, is competent to express an opinion as to such rental value both before and after the injury.

3. TRIAL—CONDUCT OF—QUESTION FOR JURY—CONFLICTING TESTIMONY.
   On the trial of such action it appeared that a gateway opened by defendant did not lead upon the required strip of land, but into defendant's depot. Defendant's

evidence tended to show that there was no travel over such strip, unless trains stopped opposite the hotel, which they had long since ceased to do, but passed on to the depot, from which there was a passage to the hotel. Plaintiff's evidence tended to show that the opening should be opposite the entrance to the hotel, where it could be observed; that for many years a large number of passengers had passed through such opening, ceasing only when the fence was erected. *Held*, that the evidence, being conflicting, the question of damages to plaintiff was properly submitted to the jury.

4. SAME—INSTRUCTIONS—REQUEST TO CHARGE.

On such trial defendant claimed, as matter of law, that a regulation prescribed by it for persons passing through such gateway was reasonable. Plaintiffs consented that the court so instruct, but defendant declined to accept the admission, and the court said, "I will charge, if you request;" and then stated that such regulation was a reasonable and proper one. *Held*, that such instruction was not open to the criticism that the court did not so charge, unless requested by defendant; the fair construction being that the first part of the court's remarks was addressed to defendant's counsel, and the latter to the jury, defendant acquiescing.

5. SAME—EVIDENCE—VALUE OF REAL ESTATE.

On such trial, where a witness has stated that he knows what such rental value was, he is properly allowed to state the same, as the inquiry calls for a fact within his knowledge, and not for his opinion.

6. EASEMENTS—RIGHT OF WAY—OBSTRUCTION—WHAT ARE EXCESSIVE DAMAGES.

In determining such question it appeared that the jury had before them the size and capacity of the hotel, its furniture and surroundings, the manner in which it was conducted, and the sources of its patronage, for many years; that the reservation of right of way and free access across such strip of land was regarded at the time it was made as a valuable appurtenant right; that such right of way had been entirely barred for 83 days, after which time a gateway was erected, through which people were allowed to pass under railroad regulations. Plaintiff testified that with such right of way the hotel was worth $12,000 per annum, and without it was valueless; and that the receipts from a restaurant attached shrank from $1,900 to $700 per month. Two former trials of the action had resulted in verdicts for plaintiff of $20,000 and $6,000, respectively. *Held*, that a verdict of $10,000 for plaintiff would not be set aside as excessive. BECKWITH, C. J., dissenting.

7. WITNESS—EXAMINATION—USURPING PROVINCE OF JURY—HARMLESS ERROR.

On such trial a witness was allowed to state what such rental value would have been if defendant had maintained a sufficient gateway to the hotel over a certain strip of land, as it was required to do. A point in issue was whether a gate established by defendant was sufficient. *Held*, that the allowance of such statement was error, as it was the province of the jury to determine the question of sufficiency; but as all the facts were before the jury, and as the attention of the witness was particularly called to the condition of the gateway as established, such error was harmless.

8. PLEADING—AMENDMENT—WHEN ALLOWED.

In such action the complaint alleged that defendant had constructed a fence across a strip of land leading to the hotel, which it appeared both plaintiff and defendant were entitled to use in common, but that it was defendant's duty to maintain a gateway through the fence. It further alleged that defendant had constructed a fence across an alley leading to the hotel, with the use of which it appeared defendant had no right to interfere. *Held* that, though the theory of the complaint was that defendant had no right to erect either fence, it was broad enough to embrace a failure to maintain the required gateway, and should be amended to conform to the proof; and therefore a refusal to nonsuit plaintiff or to direct the jury to find nominal damages was not error.

Appeal from trial term.

This action is brought by John G. Avery against the New York Central & Harlem River Railroad Company, to recover damages for depriving plaintiff of the right of access to, from, and upon a certain strip of land. The plaintiff is lessee of a certain hotel and premises situate upon the corner of Exchange and Michigan streets, in the city of Buffalo. The premises adjoin, upon the south, lands owned by the defendant, and were formerly separated by a strip of land 30 feet in width, running east and west 240 feet, and north to Exchange street, on the westerly end of plaintiff's premises 100 feet. In 1844, James Wadsworth, being then the owner of all the property, conveyed a portion to defendant's predecessor for a passenger and freight depot, and for no other purpose, and described the said 30-foot strip of land as thereby dedicated for the purpose of a public street. The said strip was used for some purposes

as a public way, but was never accepted as a street by the city authorities, and never became dedicated as such, but remained the property of Wadsworth, and descended to his devisees at his death.  In 1850 Wadsworth died, leaving a will by which he devised the land not theretofore conveyed to his children, one-quarter to each of his sons, and one-quarter in trust for Elizabeth Wadsworth, his daughter, and one-quarter in trust for his grandson, Martin Brimmer, Jr.  In 1853 the lands leased, excluding the 30-foot strip, were partitioned, and one-half of the premises conveyed to the trustees of Martin Brimmer, Jr., and one-half to Charles James Murray, an infant.  In 1857, James S. Wadsworth, as trustee of Brimmer and as general guardian of Murray, by quitclaim deeds conveyed to the defendant an undivided one-half portion of the said strip, being 20 feet in width, and adjoining the lands previously conveyed by James Wadsworth to defendant's predecessor.  In the conveyance from Wadsworth as trustee of Brimmer there is a reservation, as follows: "This conveyance is upon the express condition that the said railroad company, their successors or assigns, shall, at all times, maintain an opening into the premises hereby conveyed opposite the Exchange Hotel, so called, adjacent to the premises hereby conveyed, for the convenient access of passengers and their baggage to and from said premises, hereby conveyed; which opening shall at no time be closed against such passengers and their baggage, subject, however, to all proper regulations of police and railroad discipline of persons on the said premises."  In the deed from Wadsworth, as general guardian of Murray, the reservation is somewhat different, and is expressed thus: "This conveyance is upon the express condition that the said railroad company, their successors or assigns, shall, at all times, maintain an opening. into the premises hereby conveyed, opposite to the Exchange-Street opening of the hotel premises, adjacent to the same, and of like width and height." The remainder of the reservation is the same as in the other deed.  After the execution of the deeds the defendant entered upon the 20-foot strip, and laid its tracks thereon, and has since used the same.  During all of this time there was upon the premises leased by plaintiff the hotel mentioned in the deeds called the Exchange Hotel, and now known as the Continental Hotel.  This hotel depended largely for its patronage upon passengers arriving and departing from defendant's depot, to which they had access by and over the 20-foot strip.  Such patronage and access to and from the hotel so continued until August, 1881, when defendant erected a fence on the northerly line of said 20-foot strip, running westerly from Michigan street to a point 10 feet westerly from the westerly end of the hotel; thence northerly to Exchange street; and thence westerly to defendant's depot structure.  Such fence was 10 feet from the hotel, and shut off all access to the 20-foot strip to or from the hotel. Gates were constructed in this fence,—a double gate immediately opposite the southerly entrance to the hotel 12 feet in width; a double gate at the westerly end at the intersection of the fence running to Exchange street, same width as the other; also two gates, one leading from the westerly entrance into the alley west of the hotel, and the other leading from said alley into Exchange street.  The fence thus erected was about four feet in height.  When put in the gates were locked, and all ingress or egress refused to or upon the 20-foot strip.  The gates and fence so remained until December 2, 1881.  On the last-named date the defendant unlocked the gate at the westerly end of the fence, and stationed men there to guard the gate, with instructions to permit all persons to pass out who desired, and all persons to enter who had a ticket, and when trains were made up for leaving in the depot.  No baggage except such as was carried by hand was received or allowed to pass through the gates. These gates have been so maintained since, but those opposite to the southerly entrance to the hotel have at all times remained fastened, except when used by defendant, for a short time, they were opened, and then closed and locked. The fence and gates remained in the alley west of the hotel, and for upward

of a year plaintiff was denied access thereto. He was subsequently given a key to these gates, and afterwards used them in common with the defendant. This action was commenced on the 28th day of January, 1884, to recover damages from September 10, 1881. The trial resulted in a verdict for plaintiff for $10,000. A motion was made for a new trial upon the minutes of the trial judge, which was denied, and defendant appealed to this court.

Argued before BECKWITH, C. J., and HATCH, J.

*James F. Gluck,* for appellant.    *Truman C. White,* for respondent.

HATCH, J.    The rights of the parties in this action have been adjudicated by the court of appeals, (106 N. Y. 142, 12 N. E. Rep. 619.) As there settled, the plaintiff is entitled to an opening through the fence "of a size reasonable, proper, and fit, which shall be opposite to the hotel and adjacent to the premises conveyed by the deeds, and large enough for the convenient access of passengers and their baggage to and from the said strip; which opening must at no time be closed against such passengers and their baggage, and which access must be subject to all proper regulations of police and railroad discipline of persons on the said premises." It was conceded upon the trial that for a period of 83 days no opening whatever was maintained through the fence which led to or upon the 20-foot strip, or which gave access to defendant's depot. It cannot, therefore, be successfully maintained that during that period the plaintiff was in the enjoyment of his rights secured by his lease. He was deprived of such rights by the act of the defendant, and in consequence became entitled to recover at least nominal damages, within the rule laid down. So far as the right to use the alley lying west of the hotel is concerned, the defendant has not shown any right or title to that portion whatever, much less a right which authorized them to inclose and appropriate the exclusive use to themselves, to the exclusion of the plaintiff. It was a naked assumption of right, resting upon no authority to support it. The right to the use of this alley was an appurtenant to the hotel which passed with plaintiff's lease. No grant or conveyance of this portion of the premises by Wadsworth or his devisees was ever, so far as the record discloses, made to the defendants. Consequently, when the defendant inclosed that portion it committed a trespass upon the plaintiff for which he became entitled to recover such damages as he has sustained. The defendant, however, insists that no recovery can be had under the plaintiff's complaint in this action, for the reason that his alleged cause of action is based upon an assumed right that plaintiff had a right to use and occupy the 20-foot strip as tenant in common with the railroad company, and that solely by reason of the erection of the fence plaintiff had suffered damages. His claim cannot be sustained. The allegations of the complaint are that the defendant erected the fence not only upon the 20-foot strip, but also upon that portion of the alley lying westerly of the hotel, and that by reason of such erection plaintiff has been deprived of the use and enjoyment of said alley or way, as well as being prevented from using and enjoying the southerly 20 feet; and that by reason of being deprived of the use of the westerly portion of the alley or way the plaintiff's business had been largely interfered with and broken up. As already seen, in the westerly portion of the alley the defendant had acquired no right to erect the fence; and the allegations of the complaint show this to be a clear invasion of plaintiff's rights, and states a perfect cause of action. It is undoubtedly true that the theory of the complaint is that the defendant had no right to erect or maintain the fence, but the allegation is broad enough to embrace the failure to provide an opening. As the allegation is that the whole fence is an obstruction, this includes such portion as the defendant was required to keep open. It does no violence to the rights of the parties, and does not bring in a new cause of action to now amend the complaint to conform to the proofs. Code Civil Proc. § 733; *Reeder* v. *Sayre,* 70 N. Y.

190.  The complaint will therefore be considered as amended to conform to the proofs, and should be so entered as amended in the judgment roll.  No error was therefore committed by the court in refusing to nonsuit the plaintiff, or to direct the jury to find nominal damages.

The defendant also claims that after the 2d of December, 1881, they in all respects substantially complied with all the requirements contained in the reservations in the deed, by keeping posted gate-men to let out and admit passengers at the gates in the westerly end of the fence.  These gates did not lead onto the 20-foot strip, but into defendant's depot.  But it is claimed by defendant that there was no travel by passengers over the 20-foot strip after the trains were run into the depot; that it only existed when the trains stopped opposite plaintiff's hotel; and that long before the fence was erected the trains had ceased stopping there, and the travel was upon the 10-foot walk, being diverted from the 20-foot strip by reason of the delivery of passengers at a different point, and in consequence plaintiff has failed to show any damages; that no damage was shown while the gates were closed, as it simply prevented passengers from going over the 10-foot walk, for which no action would lie.  Upon the other hand, it is claimed by the plaintiff that the opening should be opposite the entrance to the hotel, where it would be observed by passengers in passing, and so indicate a way to his hotel, or give information, where otherwise would appear an unbroken fence and obstruction, through which passengers could not pass; that for many years large numbers of passengers have come that way, and only ceased when the fence was erected.  The statement of these respective claims, which were supported by evidence on either side, serves to make it clear that they are both legitimate arguments to be addressed to a jury, from which under the evidence they would be warranted in finding either proposition; but there was no such failure of proof upon the one side or preponderance upon the other as would justify a court in withholding the question from the jury.  We therefore think the question one which was properly left for their determination.

Upon the trial of this action the plaintiff was permitted to ask and receive answer to the following questions:  "*Question*.  Do you know what the rental value of your Continental property, real and personal, would have been between the 10th day of September, 1881, and the 28th day of January, 1884, if there had been a sufficient opening kept and maintained by the defendant, opposite to your hotel, for the convenient access of passengers and their baggage to and from the 20-foot strip of land lying south of the hotel?"  Objection was made and overruled, to which the defendant took exception, and the witness answered:  "*Answer*.  Yes; I think I do.  It would be worth $12,000 a year."  The witness was then asked:  "*Q.* What was it worth in fact, as the property was situated during that period of time?"  This was also objected and excepted to, and the witness answered:  "I don't consider it worth anything."  The ground of objection was threefold:  *First*, that the rental value is not the proper measure of damage; *second*, that the witness was not shown competent or qualified to speak upon the subject; *third*, that it called upon the witness to determine what was a reasonable, fit, and proper opening.

The action is brought to recover damages to the leasehold interest held by plaintiff.  The evidence tended to show that the acts of the defendant decreased the volume of business done by plaintiff.  So far as the business was thus diverted from its usual channel, it measurably decreased the value of the leasehold interest, and consequently its rental value.  We think it falls within the class of cases which hold that, where acts are committed which tend to impair the use and enjoyment of premises, the true measure of damage is the depreciation of the rental value.  *Jutte* v. *Hughes*, 67 N. Y. 267–271; *Francis* v. *Schoellkopf*, 53 N. Y. 152–155.  It appears by the record that the question put called for the knowledge of the witness with respect to the subject-matter.  To this extent the question was unobjectionable, at least so far as it re-

lated to the rental value.   It also appears that he answered in the affirmative,
so that, so far as the witness went, he claimed to know.   Aside from this,
however, it did appear from his previous examination that he had known this
hotel property since 1845, and had been familiar with it since about 1855, and
that he had been its proprietor and lessee since January, 1874.   This was suf-
ficient knowledge to permit him to express an opinion as to its rental value.
There is no fixed rule measuring the extent of knowledge which must be pos-
sessed by a witness before he is permitted to express an opinion as to value.
When he is shown to have some knowledge upon which to base it, he is al-
lowed to speak, and the weight to which it is entitled is for the jury to deter-
mine.   *Redell* v. *Railroad Co.*, 44 N. Y. 367–370; *Jarvis* v. *Furman*, 25
Hun, 391–394; *Mercer* v. *Vose*, 67 N. Y. 56–58.

The third ground presents a more serious question.   As we have seen, the
court of appeals have determined the rights of the plaintiff.   It is upon these
rights, as thus defined, that the parties come to trial.   For a period of 83
days it is conceded upon the trial that no opening of any character was main-
tained; at the expiration of which time the defendant caused to be placed in
the westerly end of the fence two gates, at which it stationed a gate-man,
with instructions to permit all persons to pass out who desired, and to per-
mit all persons to enter who applied, if they had a ticket, and the train they
desired to take was ready to leave the depot.   No baggage, save such as was
carried by hand, was allowed to pass through the gates or be received at this
point.   The defendant then claimed that this was in all respects a substantial
compliance with the conditions of the deeds, and upon this the plaintiff joined
issue.   The bulk of the evidence given upon the trial was devoted to this con-
tention as to whether this was or was not a proper, fit, and suitable opening.
In submitting the case to the jury, the court said:   "The first [question] is,
has the defendant, as it is by law required, maintained a suitable, convenient,
and proper opening for the passage of passengers to and from this strip of
land, as provided they shall do?"   The claim of the plaintiff was that he was
entitled to an opening opposite the Exchange-Street entrance, and of like
width and height.   It is thus seen that the evidence offered and received bore
upon a vital point in the case, which was a question solely for the jury to
determine.   The question, as put, allowed the witness to determine and ex-
press an opinion upon what he conceived to be a fit, reasonable, and proper
opening, and his opinion was based thereon.   In this we are inclined to think
he invaded the rule, and usurped the province of the jury.   *Ferguson* v. *Hub-
bell*, 97 N. Y. 507; *Schwander* v. *Birge*, 46 Hun, 66.   But we are also of
opinion that this error was substantially cured.   It was undisputed that there
was opposite the southerly entrance to the hotel two gates, making an open-
ing 12 feet wide, which were kept locked.   There was no contention but that
their size answered the requirements of the reservations in the deeds.   This
was all before the jury.   The only point, therefore, lacking was, did Avery
base his opinion upon this opening provided for by the locked gates?   If he
did, then the jury had before them every fact upon which he based his opinion.
Upon cross-examination he was asked:   "Mr. Avery, you say the difference
in the rental value is due to your not having a proper and sufficient opening
in the twenty-foot strip?   Yes, sir; I think it is.   Do you mean by that that
you think that by reason of this fence being there and the gate being closed,
that you have been prevented from doing business with people on that twenty-
foot strip, or with the people coming from the depot?   The closing of this
opening prevents people riding in the depot from seeing any opening.   What
you claim is that because the people didn't get to your hotel from the depot on
the twenty-foot strip?   If there was an opening they could see.   It looks like
an asylum with a picket fence around it."   It thus appears that his attention
was specifically called to the very subject upon which he had based his opin-
ion, and he designated the opening contemplated by him, and there was but

the one opening to which he could refer.  This we think presented to the jury all the facts upon which he based his opinion, and satisfies the rule of law.

The further claim is made that excessive damages were awarded.  The accurate measurement of damages in cases of this character is beset with much difficulty.  How many passengers would have patronized plaintiff's house, if the opening was properly provided, does not admit of accurate estimate. What the rule requires is that the jury shall pass judgment upon all the facts and circumstances, measuring such as are definite, with approximate accuracy, and such as are not susceptible of precise and accurate measurement by the exercise of sound and considerate judgment; having reference to the surroundings and circumstances of the case.  *Houghkirk* v. *Canal Co.*, 92 N. Y. 219.  In this case the jury had before them the size and capacity of the hotel, its furniture and surroundings, the manner in which it was conducted, and the source of its patronage, for many years.  They had also the right to draw the inference, from the reservations in the deeds, that free access to and from the 20-foot strip, and thence to the cars and depot of defendant, was recognized at the time as a valuable appurtenant right to the hotel, and a source of much profit.  In addition to this, the plaintiff has testified that, with the opening provided for in the deeds, the rental value of the hotel was $12,000 per annum, and without them it was valueless; that the receipts of the restaurant fell off two-thirds, and the cash receipts shrunk from $1,900 per month to $700.  These were all considerations for the jury.  It was a case peculiarly for them.  *Drucker* v. *Railway Co.*, 106 N. Y. 157–164, 12 N. E. Rep. 568.  If the testimony of plaintiff is true, then the verdict cannot be said to be excessive.  Of his credibility the jury were the judges.  The court, in submitting the case to the jury, was careful to call special attention to the claimed contradictions of the plaintiff, and cautioned the jury in respect thereto.  The charge was as full and fair on that subject as the defendant was entitled, and in one respect more favorable to defendant than it was entitled; for it expressly withdrew all claims for damage except such as arose from not maintaining an opening into the 20-foot strip,—thus ignoring the appropriation of the alley at the westerly end of the hotel, which plaintiff was entitled to have and use.  We may not set aside solely for the reason that the facts would seem to require a verdict for a smaller sum.  The subject of damages is for the jury to determine, and must rest in their judgment and discretion; and unless the court can clearly see that the verdict is the result of passion, prejudice, partiality, or corruption, or that the jury have been improperly influenced, the court should not interfere.  *Peck* v. *Railroad Co.*, 8 Hun, 286.  In *Bierbauer* v. *Railroad Co.*, 15 Hun, 559, the action was to recover damages for the death of plaintiff's intestate, caused by defendant's negligence.  Deceased was about 21 years of age, and earning about $25 per month, was unmarried, had no children, but left him surviving a father 65 years old, a mother, two brothers, and a sister residing in Germany.  The verdict was for $5,000.  The judge, writing the opinion, was unable to see how the verdict could be sustained upon any theory of legitimate damages; yet the court upheld the verdict, for the reason that they could not plainly see that any improper element was considered or influenced the jury.  Affirmed on appeal, 77 N. Y. 588; *Bowles* v. *Railroad Co.*, 46 Hun, 324; *Thorne* v. *Turck*, 10 Daly, 327; affirmed on appeal, 94 N. Y. 90.  In all of the above cases the facts were quite as strong warranting interference as are here represented.  This case has been three times tried.  Upon the first trial the jury rendered a verdict in plaintiff's favor for $20,000, which was set aside as excessive.  Upon the second trial a verdict was rendered for $6,000.  This was set aside for the reason that the ruling of the court was in conflict with the conclusion of the court of appeals as laid down in *Avery* v. *Railroad Co.*, 106 N. Y. 142, 12 N. E. Rep. 619, subsequently decided.  The present trial results in a verdict of $10,000.  Under the rule, we cannot say that the jury

have been improperly influenced, or that the damages are excessive. *Mahar* v. *Simmons*, 47 Hun, 479; *Shaw* v. *Railroad Co.*, 8 Gray, 46.

Defendant also claims that the court erred in not holding, as a matter of law, that the regulation prescribed by it, with respect to persons passing through the gates, was a reasonable regulation. If we assume that this was error, we think that it was cured by subsequent instruction to the jury. Counsel for plaintiff stated that he consented the court might charge the regulation was a reasonable one. Counsel for the defendant stated that he declined to accept the admission. Therefore the court said: "I will charge, if you request;" then followed a statement by the court "that the regulation regarding the admission of persons at the little gates was a reasonable and proper regulation." The criticism is that the court did not so charge unless counsel requested it, and that no request was made. We think otherwise; that the fair construction of the whole language is that the counsel had requested the court so to charge, and that the reply was made to counsel, so that the court should not misunderstand, and that the charge was made, counsel acquiescing therein. In this view no error remains.

We have examined all the other exceptions and rulings urged upon our attention, and find no error. The order denying a motion for a new trial is therefore affirmed, with costs.

TITUS, J., does not sit in this case. BECKWITH, C. J., dissents, and is of opinion that the verdict for damages was excessive.