### AVERY *v.* NEW YORK CENT. & H. R. R. CO.

*(Superior Court of Buffalo, Special Term.* October 9, 1889.)

1. **EASEMENTS—OBSTRUCTION—ACTIONS—PARTIES—LESSEES.**
   Where the enjoyment of an easement appurtenant to property is obstructed, the lessee of the property may sue for damages, he being the real party in interest, in whose name actions are required to be brought by Code Civil Proc. § 449.

2. **SAME—NUISANCE.**
   The lessee of property to which an easement is appurtenant may sue for damages for the obstruction thereof, it being a nuisance.

Action by John G. Avery against the New York Central & Hudson River Railroad Company. There was a verdict for plaintiff at the trial term, and defendant moves for a new trial. For previous litigation between the same parties, see 2 N. Y. Supp. 101, 109.

*White & Simons,* for plaintiff. *James F. Gluck,* for defendant.

HATCH, J. The court of appeals, in an action in equity between these parties, has heretofore held that in and by certain conveyances which define the rights of these parties, and of plaintiff's lessor, there shall be kept an opening through a fence separating their respective lands, "of a size reasonable, proper, and fit, which shall be opposite to the hotel, and adjacent to the premises conveyed by the deeds, and large enough for the convenient access of passengers and their baggage to and from the said strip; which opening must at no time be closed against such passengers and their baggage, and which access must be subject to all proper regulations of police and railroad discipline of persons on the said premises." *Avery* v. *Railroad Co.,* 106 N. Y. 142, 12 N. E. Rep. 619. This court has heretofore adopted and applied the rule thus laid down. *Same* v. *Same,* 2 N. Y. Supp. 101. The court of appeals further held and decided that the aforementioned provision in the deeds "was intended to be an agreement or covenant between the parties running with the land," and that it constituted "an easement reserved for the benefit and in favor of the grantors, being owners of the remaining hotel property, and as appurtenant to it, and fairly necessary for its full and proper enjoyment. It therefore runs with the hotel property, and in favor of its owner or lessee, the latter of whom has such an interest in its existence as courts will recognize and protect." This would seem to be decisive of the right of the plaintiff to maintain this action. But the defendant insists that since the period embraced within that action the plaintiff has surrendered the lease he then held, and taken another at a time when the defendant had invaded the rights secured by the deeds; that this act of the defendant was a breach

of the covenant, in consequence of which it ceased to be a covenant real, running with the land, but became a mere chose in action, for which alone the right of action vested in the lessor and owner, and not in the lessee. The cases cited by the learned counsel for defendant in support of his claim are *Beddoe's Ex'r* v. *Wadsworth*, 21 Wend. 120; *Greenby* v. *Wilcocks*, 2 Johns. 1; *Hamilton* v. *Wilson*, 4 Johns. 72; and some others to which it is not necessary to refer, as they do not add to the weight of those cited. These were all actions for breach of covenant of seisin, quiet enjoyment, and against incumbrances, and decide the doctrine with not exact agreement, but sufficient to sustain the point contended for, that the breach occurs the moment of the execution and delivery of the deed, and is no longer a covenant running with the land, but becomes a mere chose in action, incapable of assignment, with the right of action vesting in the grantee alone, and passing to his personal representatives. The reason assigned is that, the covenant being broken, there remained no land to which it can attach, but only a personal right. As expressed in *Greenby* v. *Wilcocks, supra:* "The covenants, it is true, are such as run with the land; but here the *substratum* fails, for there was no land whereof the defendant was seised, and, of consequence, none that he could alien." Id. 4. And in *Hamilton* v. *Wilson*, 4 Johns. 72: "The covenant here was not connected with the estate, because, as no estate passed by the deed to the ancestor, none descended to his heirs."

It is to be noticed that all the cases were for breaches of covenant, where the whole title had failed, and where the person in at the breach is ousted by title paramount. The damages are thus fixed and certain, and partake of the character of personalty. So a distinction was made between covenants going to the title and those which go to the enjoyment, (*Norman* v. *Wells*, 17 Wend. 160,) for the reason that the latter could not be at once estimated, but depended upon their operation. They are all without application here, for the reason that the lessor of the plaintiff has never been evicted of his title. So far as his title is concerned, it is as perfect now as it has been at any preceding time. He now has, and has always had, as perfect a right to lease, sell, or assign as any other owner of real property, and to vest in tenant, purchaser, or assignee as perfect a title as he himself possesses. The ancestor of plaintiff's lessor did not get title or right to enforce this covenant or easement by virtue of any covenant running from defendant or its grantor, but it is a right reserved by the ancestor of plaintiff's lessor in his own deed. There could be no more failure of this covenant to run with the land by wrongful act of the defendant than there could by the wrongful act of any other person. It is an agreement which sticks fast to the land, and accompanies the land wherever it goes, or into whosesoever hands it comes. It may be invaded, but it cannot be broken or done away with, except by owner of the fee. To say otherwise would be to allow the defendant to take advantage of its own wrong. The defendant has wrongfully invaded the rights reserved in the deeds. It now says to the owner: "You can neither lease, sell, nor assign these premises until my invasion be repelled, else the lessor, purchaser, or assignee gets no title, and can maintain no action for damages; and, as to yourself, you can have once for all a right of action for damages, which, when paid, deprives you of all right forever in this land." It is not believed that valuable rights in real property, secured by deed under seal, can be destroyed thus easily and summarily, or that real property can be thus diminished in value or title thereto transferred in this manner; but, if we assume that the doctrine is in all respects applicable to this case, it is sufficient, in answer, to say that such doctrine, however correct it may have been, is no longer the law in this state. By the old Code, (section 111,) and by the present Code of Procedure, (section 449,) actions are now to be brought in the name of the real party in interest, and all choses in action are now assignable, vesting good title in the assignee, who may maintain an action thereon,

except those that from their nature are unassignable, or those that are expressly forbidden by law. *Boyd* v. *Belmont*, 58 How. Pr. 513. But the latter class do not embrace damages arising from breaches of covenants in deeds which pass to intermediate grantees and assignees, vesting the cause of action in the party in interest. *Andrews* v. *Appel*, 22 Hun, 429, where the court says: "The objection, existing at common law, that a covenant or chose in action was not assignable, has been obviated by our modern legislation." Id. 433; *Ernst* v. *Parsons*, 54 How. Pr. 163. As before remarked, in the equitable action between these parties the court held this covenant to constitute an easement running with the land, and enforceable as such in the possession of owner or lessee. In doing this, the court but affirmed what was before familiar doctrine. *Trustees* v. *Lynch*, 70 N. Y. 440. This was a case where there were mutual covenants limiting the use of lands of the covenantees to certain purposes. The defendant was the grantee of one of the covenantees who had violated the covenant. It was held to be such a covenant as could be enforced, even though it did not run with the land, and that an interference with the right creating it could be enforced by appropriate remedies, either at law or in equity, and that this right exists for the benefit of the owners of the land at the time being, who are the proper parties to bring the action. It is unnecessary to carry the rule, for present purposes, so far as it was there carried; for here is a reservation contained in a deed, it creates a right of way, is an appurtenant right to this hotel of much value, and, within the principle of the decision last cited, its integrity may be protected by appropriate legal remedies by the person at the time being in possession, and entitled to its use and enjoyment. The lease under which defendant held, vested him with the right to enjoy the hotel property, and the whole thereof, carrying with it all appurtenant rights, embracing the right to a free and uninterrupted use of the said easements. Possessing such right, he was the party in interest, and could protect it by legal remedy to remove any obstruction, or seek redress in damages for the wrongful act. *Taylor* v. *Railway Co.*, 50 Super. Ct. 311–316. The contention, therefore, that plaintiff has not legal capacity to sue cannot be upheld.

There is, however, another ground upon which this action may be maintained. The complaint alleges the right of way as an appurtenant right to the hotel of much value; then alleges its obstruction by the defendant, and that the latter is without right, constituting a trespass in the nature of a nuisance, from which the plaintiff suffers damage. The court of appeals have held that an unlawful obstruction of an easement is a continuing nuisance, for which, as one of the remedies, the person damnified may bring successive suits to recover his damages. *Uline* v. *Railroad Co.*, 101 N. Y. 98, 4 N. E. Rep. 536; *Pond* v. *Railroad Co.*, 112 N. Y. 186, 19 N. E. Rep. 487. The evidence here tended to show an obstruction by defendant of the easement, and also damages arising from the unlawful management and operation of its road adjoining the hotel, alleged also to be a nuisance. Under these authorities and the evidence, I think the action can be maintained by plaintiff independent of the relation of the parties with respect to the covenants. The case of *Taylor* v. *Railway Co.*, *supra*, is not in conflict with these views. There the lessee took the new lease with full knowledge of the existence of the railroad and its operation; that it was a permanent structure; and consequently the rental paid was presumed of fair value, having in contemplation the existence and operation of the road. Here the structure was not permanent, and there was, at the time of the new lease, a judgment restraining defendant from a continuance of the obstructions, and directing its removal, of which plaintiff had notice,—was a party thereto. It is fair to presume, therefore, that plaintiff took the new lease in contemplation of the compliance by defendant with the judgment, which would give him the full enjoyment of the appurtenant right. The court charged the jury that the defendant had no right to

erect a fence in that portion of the alley running from Exchange street south to the 20-foot strip. An exception was taken. It is now urged that this was error, as it did not appear that plaintiff or his lessor had title to or right in the alley. It has been already determined that the ancestor of plaintiff's lessor dedicated for public use a strip of land, 30 feet wide, running from the easterly end of the hotel, on Michigan street, westerly 240 feet, and thence, at right angles, northerly, 100 feet, to Exchange street. This has always been designated as an alley. It never became a public street, as there was no acceptance by the public authorities. Subsequently, the heirs of said ancestor assumed to and did convey to defendant 20 feet of so much of said strip as lies south of the hotel, being 240 feet in length. This left the title to the remaining portion of the land, which includes the whole of that portion running south from Exchange street to the 20-foot strip, in plaintiff's lessor, and it has never passed therefrom. All this is abundantly established by the deeds, map, and judgments introduced in evidence upon this trial. It further appears by the testimony that the Exchange-Street alley has always been used as an appurtenant to said hotel structure in furnishing access to and from the same for travelers, to bring in supplies, and remove garbage. This, being established, gave to the plaintiff as free and unincumbered a right to the use of the alley as to any other portion of the hotel premises; and, when the defendant erected its fence therein, it did so without shadow or color of authority. Such act interfered with plaintiff's use of the alley; and to the extent that he suffered damage he was entitled to recover. I therefore think the charge was right.

It is further claimed that the evidence is insufficient to show that damage was sustained by the plaintiff by reason of the obstruction of the easement, assuming it was obstructed, for the reason that the patronage to the hotel passed over the 10-foot space next to the hotel, instead of over the 20-foot strip, and that the former was at no time obstructed during the period embraced in this action. This point was urged and considered by this court at general term in *Avery* v. *Railroad Co.*, 2 N. Y. Supp. 101, and decided adversely to the defendant. The facts as to use are substantially the same in this case. I see no reason for changing my views as therein expressed, and upon this point concurred in by the court.

It is further urged that the verdict for damages in this case is excessive. This point was also urged in the case last cited, and the question fully considered. The evidence here presented upon the question of damages is very much the same as there, and I reached the conclusion then that they were not excessive. The damages claimed here embrace a period of one year seven months and two days; and, in addition, there was brought in another element of damage, set up as a second and a different cause of action, not present in the case referred to, viz., proof of damage to the property of plaintiff by reason of the unlawful use of the tracks immediately adjacent to the hotel. There has not been in the court entire harmony upon this question; but for the reasons assigned in the case last cited, and on account of the additional cause of action, from which the jury were authorized to find additional damages, I am unable to say that the verdict of the jury is unwarranted, or that the damages are excessive. The court was asked to charge "that even if the jury believe that the defendant has not used this twenty-foot strip in a lawful manner, and that the plaintiff has sustained some pecuniary loss, there being no evidence to show its extent, or from which they can verify what that extent is, or from what source it arises, their verdict must be for nominal damages;" to which the court answered: "Yes, I so charge." The jury had already been charged fully upon this question, and it had been left for them to say whether the use of the road by defendant had been unlawful, and, if so, had the plaintiff suffered damage therefrom, which, if they found he had, they were to assess the amount thereof. The request is seemingly inconsistent with this charge,

and must have been made under a misapprehension.  The jury have, however, rendered a verdict taking into account this element, and in accordance with the original charge.  Having adopted the correct rule, effect will be given to the verdict.  2 Thomp. Trials, § 2061, p. 1473; *Wells* v. *Zallee*, 59 Mo. 509.  There are no other questions save such as have been heretofore disposed of.  The motion for a new trial is denied, with costs.