(*Supreme Court, General Term, First Department.* March 14, 1890.)

PLEADING—SHAM ANSWER—GENERAL ISSUE.

Where the general issue is pleaded, the court has no power to strike out the answer as sham.

Appeal from special term, New York county.

Action by Frederick B. Wilson against Eastman & Mandeville Company. Defendant appeals from an order striking out its answer as sham.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*W. B. Ellison,* for appellant. *Leopold Wallach,* (*Wm. Armstrong,* of counsel,) for respondent.

VAN BRUNT, P. J. This action was brought for the purpose of procuring a sequestration of the property of the defendant corporation, and the division of the proceeds of the property among the creditors of the defendant pursuant to the provisions of the Code. The complaint alleged the recovery of a judgment against the defendant in the city court of New York, and the filing of the transcript, and the docketing of the judgment in the office of the clerk of the county of New York, and subsequently the filing of a transcript in the office of the clerk of the county of Kings, being the place where the principal business of the defendant was carried on; the issuance of an execution to the sheriff of Kings county, and the return of said execution wholly unsatisfied; and that said judgment remained wholly unpaid; and that the plaintiff was insolvent. The defendant, by its answer, denied that it had any knowledge or information sufficient to form a belief as to any of the allegations contained in the complaint, except that alleging the incorporation of the defendant, and that its principal place of business was located in the city of Brooklyn. This answer was stricken out as sham, and from the order thereupon entered this appeal is taken. The ruling of the court below was clearly erroneous. In the case of *Wayland* v. *Tysen,* 45 N. Y. 281, it was expressly held that the court has no power to strike out as sham an answer setting up a general denial of the material allegations of the complaint. The answer of the defendants consisted of a general denial. It was in a form permitted by the Code. The allegations in the complaint were all necessary to its validity, and therefore came distinctly within the provisions of the decision to which reference has been made. The only case in which an answer can be stricken out as sham is where the allegations contained in the answer seek to avoid the admission of the truth of the allegations of the complaint. Where a general issue is pleaded, the right to strike out as sham has never existed. The order should be reversed, with $10 costs and disbursements. All concur.

---

### SCOTT v. PENNSYLVANIA R. CO.

(*Supreme Court, General Term, First Department.* March 14, 1890.)

1. RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS—INSTRUCTIONS.

In an action for injuries sustained by plaintiff by being run over by defendant's train, the court charged that, if the train came upon plaintiff so suddenly that before he could act he was caught by the train, that fact would not excuse the company; but, if they gave him sufficient time for a man of ordinary intelligence, exercising "ordinary care," to get out of the way, that relieved the company of liability. Defendant requested an instruction that, if the vigilance and caution of plaintiff were not proportionate to the known danger of his position, then he was not entitled to recover. *Held,* that the request was rightly refused as too abstruse, and also because the question of contributory negligence had already been

covered by the charge, and that, the court having explained the words "ordinary care" by stating that it meant "the care of an ordinarily prudent person under like circumstances," defendant had no cause of complaint.

2. Same—Signals—Evidence.

In such action, testimony of defendant's witnesses having charge of the bell or whistle, and interested in proving that the proper signals were given, is not necessarily conclusive, as against the testimony of plaintiff's witnesses that they did not hear the signals.

Appeal from circuit court.

Action by Harshaw Scott, against the Pennsylvania Railroad Company, to recover damages sustained by the plaintiff by reason of his being run over and injured by one of the defendant's trains in the vicinity of the defendant's station at Rahway, N. J. Upon the trial, the evidence given upon both sides in respect to most of the important circumstances attending the happening of the accident was in direct conflict. The evidence upon the part of the plaintiff was to the effect that about 10 minutes past 6 o'clock on the morning of November 20, 1877, the plaintiff left his house, which was situated on Milton avenue, in the city of Rahway, about 500 feet from the railroad track, along which street he proceeded a part of the intervening distance, turning thence towards the east, to a saloon known as "Brokaw's," which he entered for the purpose of procuring a newspaper. Not finding the newsboy there, he returned a short distance in the direction of Milton avenue, to what is known as "Laing's Crossing," which appears to be a narrow, flagged walk, extending to the edge of the track across the street running along-side the railway, and about 26 feet east of the point where the latter intersects Milton avenue. At this crossing the plaintiff stopped to look up and down; and, not seeing or hearing anything, he started to cross the street. Reaching the track, he continued, without any further stop, in a diagonal direction, towards the platform of the depot, in search of the newsboy. He crossed two tracks, and was about stepping upon the third, when he was struck by an express train running from Philadelphia to New York, and received the injuries which formed the basis of his claim for recovery in this action. The morning was dark and foggy, and he heard no whistle or bell, and received no warning of the approach of any train; nor was there any flagman at the Milton-Avenue crossing. The testimony of the plaintiff with regard to the character of the morning was corroborated by that of two other witnesses, one of whom (the newsboy, Drake) stated that it was a foggy, dark sort of morning,—so dark that he did not think he could have seen a person within 20 feet of him. These witnesses also testified that they did not hear any whistle blown or bell rung until the sounding of the alarm whistle when the train was in the vicinity of Milton avenue; the newsboy further stating that the train was going very fast, and passed him, at the further or eastern end of the depot, about two seconds after he heard the alarm whistle. The testimony on the part of the defendant was that the morning was not dark and foggy, but was, at most, a little hazy, and so that surrounding objects could be readily seen; and the engineer and fireman on the train in question testified that the bell on the train was started and rung continuously from 150 to 250 yards west of the station, and that the alarm whistle was blown by the engineer about 150 feet from the plaintiff, giving him a period variously calculated at from 7 to 13 seconds to get out of the way of the approaching train. There was also evidence that when the plaintiff was picked up his breath smelled strongly of liquor, but this was controverted by the testimony given in rebuttal on his behalf. In addition to the foregoing, the plaintiff put in evidence ordinances of the city of Rahway from which it appeared that all trains were prohibited from passing street crossings where there are no flagmen at a greater rate of speed than five miles an hour. There was a verdict for plaintiff for $14,000. Defendant appeals from the judgment entered thereon.

Argued before Van Brunt, P. J., and Brady and Daniels, JJ.

*Robinson, Scribner & Bright, (Osborne E. Bright,* of counsel,) for appellant.  *Roger A. Pryor, (Roger A. Pryor, Jr.,* of counsel,) for respondent.

BRADY, J.   The evidence given upon the trial created a decided conflict, and made the submission of the issues of fact eminently proper.   It cannot be said with propriety that there is a preponderance in favor of the defendant, however seriously that view is asserted.   The quality of proof, and not the number of witnesses, determines its weight and value.   It will be a rare result, in a case kindred to this, where testimony *pro* and *con* has been given, to find other than a conflict,—indeed, such a one as will justify either of two conclusions.   This view suggests, therefore, that the judgment appealed from must stand, unless some rule of law has been violated which requires a reversal.   This has not been found.   The learned counsel for the defendant has essayed, by great zeal, to cover every possible chance for reversal in case of defeat; but the cause was carefully conducted, the charge was liberal and comprehensive, and no available errors were committed.   Indeed, all the requests to charge were granted but one, and one exception only was taken to the charge itself.   These incidents are mentioned in corroboration of the statement that the charge was liberal and comprehensive, and, being so, is not likely to be exceptionable.   The respective doctrines of negligence and contributory negligence were fully and distinctly presented, and no objection was interposed thereto.

The learned judge had charged, and which may be regarded as relating to contributory negligence: "Of course, if a man is confronted with a certain danger requiring him to act with great suddenness, and makes a mistake of judgment, he is not liable for that mistake of judgment.   If it came upon him so suddenly that, before he could act, he was caught with the train, that fact would not excuse the company; but, if they gave him sufficient time for a man of ordinary intelligence, exercising ordinary care, to get out of the way before he was struck, that relieves the company of liability, and you should find a verdict for the defendant."   And the learned counsel for defendant said: "I except to that portion of your charge which says that if the train came upon him so suddenly that he was bewildered, and made an improper move, that would relieve him from responsibility,"—which was the only exception to the charge taken; but the court responded as follows, to which no exception was taken: "*The Court.* You except to what I said on that subject.   I intended to say, if it came upon him so suddenly, without fault upon his part, and before he could get out of the way, acting as a person of ordinary intelligence would do, and he was injured, he is not responsible for an error of judgment."   There can be no doubt, upon the authorities, that, in such an emergency as that described, errors of judgment cannot be invoked against the injured person.   When, by the negligence of another, one is placed in a position of peril, he is not responsible for an error of judgment in the attempt to escape.   *Coulter* v. *Express Co.,* 56 N. Y. 585.   See, also, *Twomley* v. *Railroad Co.,* 69 N. Y. 158; *Hoag* v. *Railroad Co.,* 111 N. Y. 203, 18 N. E. Rep. 648.   The exception to the request to charge appears on the record thus:   The learned counsel for the defendant asked the court to charge: "If the vigilance and caution of the plaintiff were not proportioned to the known danger of his position, then he is not entitled to recover, and the verdict must be in favor of the defendant."   Upon which the following colloquy took place: "*The Court.* I decline to charge that, except as I have already charged.   I think I have entirely covered the question of contributory negligence, and gone as far as the law allows.   *Mr. Bright.* Your honor used the words 'ordinary care.'   I except to that.   *The Court.* Where I said 'ordinary care,' I meant the care of an ordinarily prudent person under like circumstances."   As we have already seen, the court had, and without objection to its form or substance, covered the question of contributory negligence; and when the objectionable words "ordinary

care" were explained—and fully, as we have seen—no further exception was taken, although it was essential to give the prior exception vitality. The phrase employed had been dissipated, if erroneous, by a statement of its meaning which brought it within its proper legal significance. The proposition in the request, however, was metaphysical,—too abstruse for other than scientific examination, and not within the province of a jury in such a case as this, and on the evidence that had been submitted. It was an attempt to limit the plaintiff's right to recover upon his vigilance and caution accurately proportioned to the danger of his position. The statement of such a doctrine refutes it. The request seems the more objectionable when, in addition to the charge, the following requests were granted: "The defendant was under no obligation to anticipate the presence of the plaintiff on its tracks east of Milton avenue, or to make provision for his safety there, when the relation of passenger and carrier did not exist, and was not in contemplation." "It was not the duty of the defendant, on the morning and at the time in question, to have flagmen at the foot-path opposite Laing's stable, or at the other footpaths north of the railroad, or along the tracks or flooring traversed by the plaintiff." "It was the duty of the plaintiff to make vigilant use of his eyes and ears when approaching the tracks, and during all the time he was upon them; and, if the jury believe that by a vigilant use of his senses he could have discovered the approaching train in time to escape injury, the verdict must be in favor of the defendant."

The defendant's counsel, in addition, invokes the doctrine of *Culhane* v. *Railroad Co.*, 60 N. Y. 137,—that, as against positive affirmative evidence, of credible witnesses, of the ringing of a bell or the sounding of a whistle, there must be something more than the testimony of one or more witnesses that they did not hear it. In that case, however, the witnesses for the plaintiff did not say that they listened, or gave heed to the presence or absence of that signal. Such is not the proof here. But there is a further answer, and that is, the testimony of the defendant's witnesses having charge of the bell or whistle, and interested in proving that the proper signals were given, is not necessarily conclusive. The law does not require an adverse party to put his case in the hands of persons having such relations to the transaction. *Greany* v. *Railway Co.*, 101 N. Y. 422, 5 N. E. Rep. 425. This case overrules or qualifies *Culhane* v. *Railroad Co.*, *supra*, so far as the latter applies to witnesses engaged on the train, and having charge of the signals to be given.

It is not deemed necessary to give any extended consideration to the amount of damages awarded. The plaintiff's right to recover involving his own freedom from fault and the defendant's culpability, the sum given was not too much. The subject of damages is, however, for the jury; and, unless the court can say that the verdict is the result of passion, prejudice, partiality, or corruption, or that the jury were improperly influenced, the court will not interfere. *Avery* v. *Railroad Co.*, 2 N. Y. Supp. 101. See *Minick* v. *City*, 19 Hun, 253, where the rule is stated, and cases collected. The tendency to exact reparation by substantial damages, in actions for personal injuries, should be fostered, to compel a higher vigilance in the employment of dangerous engines or instruments. Hence, verdicts for $36,000, $20,701.69, $35,000, and $25,000 have been sustained. See *Harrold* v. *Railroad Co.*, 24 Hun, 184; *Voss* v. *Railroad Co.*, 49 N. Y. Super. Ct. 535; *Dyke* v. *Railroad Co.*, 45 N. Y. 114; *Ehrgott* v. *Mayor*, 96 N. Y. 265.

It may be said, in conclusion, that the accident was the result of the speed which marked the movement of the defendant's train on a foggy morning. Speed in traveling seems to be not only an American necessity, but a joy; and passengers generally are not unwilling to take risks consequent upon the most rapid transit. Railroad companies, to a great extent, seek to gratify this public desire, and no doubt too frequently overlook the danger it involves, particularly upon mornings when the obscurity of the atmosphere affects the clear-

discernment of objects along and ahead of the line of movement, and when greater caution should be observed, even if the rate of speed must be decreased to repress it. While speed and safety are to the general traveler a consummation devoutly to be wished, disaster resulting from speed is not only never borne with fortitude, but condemned and punished, if it may be. The judgment should be affirmed, with costs. All concur.