JAMES H. REEDER, et al, Respondents, *v.* JOB SAYRE, Appellant.

When one enters upon and occupies lands with the consent of the owner, under a parol lease for more than one year and so, void under the statute of frauds, the occupation inures as a tenancy from year to year, the agreement regulates the relations of the parties, and may be resorted to to determine their rights and duties in all things consistent with a yearly tenancy.

In case of such a tenancy the lessor has a right in any year of the occupancy, by giving a sufficient notice to quit, to terminate the tenancy on the last day of the rental year.

A formal notice is necessary, and it must be for the end of some year of the holding.

A tenant by parol, of farming land for a year, has not, save by express valid stipulation, or custom of the country, or estoppel *in pais*, a right to an out-going crop; the fact that the usual crop of the country cannot come to maturity in a year, does not raise by implication a right to hold over.

So also where a tenant from year to year has received sufficient notice to quit at the end of the year, prior to putting in a crop, to be harvested the next year, he has no right to the outgoing crop.

A vendee, however, who has entered into a contract with the landlord for a purchase of the premises, but who has not obtained the legal title, cannot give a valid notice to quit.

As to whether it is necessary for the landlord to serve a notice to quit at the end of the term as fixed by the parol agreement, in order to terminate the tenancy, from year to year, *quære*.

It *seems* that, under the Code, § 173, the only limit to the power of amending the pleadings in an action on trial is, that it shall not bring in a new cause of action.

Plaintiffs entered upon certain premises under a parol lease for two years from April 1, 1871, with the privilege of sowing a crop of wheat in the fall of 1872, and of harvesting the same. In June, 1872, plaintiffs then being in possession, defendant, with notice of plaintiffs' rights, entered into a contract with T., the owner, for the purchase of the premises. Defendant, before receiving a deed, served upon plaintiffs a notice to quit on April 1st, 1873. In the fall of 1872, and after service of notice plaintiffs sowed a crop of wheat, which defendant harvested and appropriated. In an action for the conversion, *held,* that the notice given by defendant was not sufficient to terminate the tenancy; that plaintiffs' interest in the lands under a valid lease of the same tenor as the lease by parol, would not have ceased entirely until they had harvested and threshed the crop of wheat sowed in 1872; that therefore they had a right in the lands after April 1st, 1873, which could not be terminated in any other way than by a notice to quit from T., while he was the owner of the legal title; that as no such notice was given, the tenancy was not terminated, and T. and his grantee (the defendant) were estopped from denying plaintiffs' right to the crop; and that defendant was liable.

One of the tenants having died, his personal representatives were made parties plaintiffs, the complaint was dismissed as to them, and judgment was entered for the survivors without its being stated that it was for them, as survivors. *Held,* that this was an irregularity to be taken advantage of on motion, and not a ground of appeal.

Also *held,* that the complaint should have been amended by averring the character or rights in which the surviving plaintiffs continued the action, *i. e.,* as survivors; but that as this amendment could have been made on the trial, it could be done here *nunc pro tunc.*

(Argued April 16, 1877; decided June 19, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department affirming a judgment in favor of plaintiff, entered upon a verdict, and affirming an order denying a motion for a new trial. (Reported below, 6 Hun, 562.)

This action was brought to recover for the alleged conversion of a quantity of wheat.

In the spring of 1871 James H. Reeder, Lyman Reeder and James M. Reeder agreed, by parol, with one Tuthill to lease of him a farm in Yates county for two years from April 1st, 1871, at an annual rental of $500, the lessees

to have the privilege of sowing and reaping two crops of wheat. There was a crop of wheat in at the time, which was reserved by the lessor. The lessees took possession under the agreement and occupied for the two years, paying the rent. In June, 1872, Tuthill contracted to sell and convey the farm to defendant, a deed and possession to be given April 1st, 1873. Defendant at the time had knowledge of plaintiffs' rights. The deed was delivered at the time specified, and defendant took possession. A short time after the execution of the contract defendant served upon the plaintiffs a notice requiring possession of the premises on the 1st of April, 1873, and forbidding them from sowing a crop of wheat that fall. Plaintiffs however went on and sowed a crop of wheat in the fall of 1872. This was harvested by defendant and appropriated to his own use, and for its conversion this action was brought. James M. Reeder died in 1873; his representatives and the surviving lessees were the plaintiffs herein.

At the close of the plaintiffs' evidence on the trial defendant's counsel made a motion to dismiss the complaint as to the personal representatives of James M. Reeder, which was granted. He also moved for a nonsuit as to the other plaintiffs, without stating the grounds therefor, which was denied, and he duly excepted. The court directed a verdict for the plaintiffs for the amount of damages, which was agreed upon, and defendant's counsel duly excepted.

*Charles S. Baker*, for the appellant. On the sale of the farm under the written contract and the execution and delivery of the deed, and the taking possession by defendant the crop of wheat passed to him. (*Wintermute* v. *Light*, 46 Barb., 278.) Defendant was the equitable owner of the farm from the time of making the contract. (*Swarthout* v. *Burr*, 1 Barb., 495; *Thompson* v. *Smith*, 1 Wkly. Dig., 456.) The original agreement for a lease to Reeder from Tuthill was absolutely void, being by parol and not to be performed within a year. (*Dung* v. *Parker*, 52 N. Y., 494; 2 R. S.

[Edm's Ed.], 139, § 8; id., 140, § 2, sub. 1; *Broadwell* v. *Getman*, 2 Den., 87; *Baldwin* v. *Palmer*, 10 N. Y., 232; *Schuyler* v. *Leggett*, 2 Cow., 660–663.) The right to sow and harvest the crop of wheat was an interest which amounted to a possession on the part of plaintiffs. (*Griffiths* v. *Puleston*, 13 M. & W., 358.) Plaintiffs were entitled to hold as tenants from year to year. (Taylor's L. & T. § 535; *Whitwarst* v. *Cutting*, 10 J. R., 361; *Price* v. *Ricketts*, 21 Ala., 741.)

*J. McGuire*, for the respondents. The crop being owned by plaintiffs did not pass with the land by the deed to defendant. (9 Cow., 39; 2 J. R., 418; 9 id., 112.) The statute providing that agreements not to be performed within a year are void, does not apply to contracts for the leasing of lands. (*Young* v. *Dake*, 1 Seld., 461; 41 Barb., 91; 4 Keyes, 397; 49 N. Y., 24.)

FOLGER, J. The plaintiffs entered upon the premises, relying upon an oral lease from Tuthill, the owner, for the term of two years' occupation of the premises, with the privilege of two crops of wheat. One of those crops would mature and be reaped during the term of two years' occupation. The other would not. It must have much of its growth and must be reaped after the two years had expired. The rent was fixed at $500 for each year. It was paid. The plaintiffs went into occupation, in pursuance of what passed, orally, between them and Tuthill. That oral agreement was void, by the statute of frauds, as to the term attempted to be created, or any interest in lands to be derived from it. (2 R. S., p. 134, § 6.) The right to take off a crop of wheat, after the two years had expired, though sowed before, was an interest in lands. (*Earl Falmouth* v. *Thomas*, 1 Cromp. & Mees., 89; *Stewart* v. *Doughty*, 9 J. R., 108.) So that the whole agreement was void, and might have been legally repudiated, as soon as it was made, by either party to it. But occupation of the lands was taken with the consent of the

owner and the rent was paid to him, in pursuance of and under the void agreement. In such case the occupation inures, as a tenancy from year to year. (*Clayton* v. *Blakey*, 8 T. R., 3; *Thunder* v. *Belcher*, 3 East, 449; *Lounsbery* v. *Snyder*, 31 N. Y., 514; *Schuyler* v. *Leggett*, 2 Cow., 660; *The People* v. *Rickert*, 8 id., 226.)

The agreement, though by parol, and void as to the term and the interest in lands sought to be created, regulates the relations of the parties to it in other respects upon which the tenancy exists, and may be resorted to to determine their rights and duties, in all things consistent with, and not inapplicable to a yearly tenancy, such as the amount of rent to be paid, the time of year when the tenant could be compelled by the landlord to quit, and any covenants adapted to a letting for a year. (*Doe* v. *Bell*, 8 T. R., 579; 8 Cow., *supra;* *Arden* v. *Sullivan*, 14 Q. B. [Ad. & El., N.S.], 832; *Doe* v. *Amey*, 12 Ad. & El., 476; *Berry* v. *Lindtley*, 3 M. & F., 498; *Edwards* v. *Clemons*, 24 Wend., 480.)

We are thus enabled to ascertain the relations to each other, of the Reeders and Tuthill, when Sayre the defendant came in, as the vendee of the premises by a valid contract of sale and purchase.

This was in June, 1872. The parol lease was in 1871; as may be inferred from April 1st of that year to April 1st of 1873. The Reeders had occupied for one year, from April 1st, 1871, to April 1st, 1872. No notice to quit had been given to them. No other act of Tuthill, the lessor, during the year 1871, had injuriously affected the rights in the premises of the Reeders. They were entitled to remain on and use the premises for the whole of the year 1872, and up to the 1st of April, 1873.

This alone did not give them, or retain for them, a right to sow in the fall of 1873 for a crop of wheat to be matured and reaped in the summer of 1874. The sure rights of a tenant from year to year, are, in each year, the rights which a tenant, by parol, for a single year has. A tenant by parol for a single year, has not at common law, nor save by express

valid stipulation, or custom of the country, or estoppel *in pais*, a right to an outgoing crop; (*Wigglesworth* v. *Dallison*, 1 Doug., 201; *Gordon* v. *Little*, 8 Serg. & R., 533; *Caldecott* v. *Smythies*, 7 Car. & P., 808; *Stultz* v. *Dickey*, 5 Binn., 285; *Bain* v. *Clark*, 10 J. R., 424; *Demi* v. *Bossler*, 1 Penn. Rep., 224; and see *Harris* v. *Frink*, 49 N. Y., 24.) No local custom is shown. It is not hinted that there is a general custom in this State. We know of none, though it is otherwise in Pennsylvania, New Jersey and Delaware, and perhaps some other States. (See Pennsylvania cases above cited, and *Van Doren* v. *Everitt*, 2 Southard, 460; *Templeman* v. *Biddle*, 1 Harring; 522.) The express stipulation was void and could be determined by the lessor's notice to quit. Whether there was an estoppel *in pais*, depends upon considerations yet to be offered.

It is true that a tenant holding by a tenure which is uncertain as to the time at which it will cease, is entitled to take off, after it has ceased, the crops which he has sowed in the due course of husbandry. But if it is certain at the time when he sows, how long it will continue, and it is plain that he cannot, before it ceases, reap that which he may sow, then it is his own folly if he sows (*Per Ld. Mansfield, Wigglesworth* v. *Dallison*, 1 Douglass, 201), and he will not be permitted to reap. This rule does not give to the tenant any right by reason of his having ploughed, manured or otherwise prepared the ground for the seed, if he has not sowed. (See *Stewart* v. *Doughty*, 9 J. R., *supra; Kingsbury* v. *Collins*, 4 Bing., 202; *Bain* v. *Clark*, 10 J. R., 424.) We think that it matters not how it is made certain when an uncertain term will cease. It may be by the death of one for whose life the lands are held, or it may be by the giving of a sufficient notice to quit by one entitled to give it. A notice to quit terminates the tenancy on the day the notice expires; (*Rigg* v. *Bell*, 5 T. R., 471.)

It is admitted by counsel *arguendo*, in Douglass, (*supra*, p. 206), that when the usual crop of the country is such that it cannot come to maturity in one year, a right to hold over

after the end of the term, in a parol demise, may be raised by implication. But no authority is cited; nor does it seem consistent with a statute which declares that no estate or interest in land, save a lease for a term not exceeding one year, shall be created by parol. (2 R. S., p. 134, § 6.)

They were entitled to remain and use through the year 1873 and up to the 1st of April, 1874, unless the occupation was sooner determined by mutual assent of them and Tuthill, or his successors in interest, or by a sufficient notice to quit from some one having legal right to give it.

It is said that so to construe is to make the lease interminable. It is interminable, save as it may be terminable, by the notice to quit of the lessor or the lessee; or by an actual or implied surrender. " In truth, he is a tenant from year to year, as long as both parties please," says Lord KENYON in *Rex* v. *Inhabitants of Stone*, (6 T. R., 295); *Doe* v. *Wood*, (14 M. & W., 682).

A sufficient notice to quit, given in 1871, would have terminated their right of occupation on the first day of April, 1872 ; (*People* v. *Rickert, supra*.) A sufficient notice to quit in 1872, would have terminated their right of occupation on the first day of April, 1873; and either of such notices, given before seeding, would have prevented the right to sow in 1873 for a crop of wheat to be gathered in 1874. For, in case of a tenancy from year to year, growing out of a parol lease void by the statute of frauds, the lessor has a right, in any year of the occupancy under it, to give a sufficient notice to quit and thus to terminate the tenancy on the last day of the rental year. A formal notice was necessary to terminate their holding, or to cut off the rights accrued and accruing to them from their occupation as tenants from year to year, under the void lease, except as hereinafter noticed. (*Bradley* v. *Covel*, 4 Cow., 349; *Jackson, ex dem.*, v. *Salmon*, 4 Wend., 327.) The notice to quit must have been for the end of some year of the holding. (4 Cow., *supra*.) In this case, for the first day of April, 1873.

So that we have before us in May, 1872, the Reeders, the plaintiffs, as tenants, and Tuthill, the owner, as landlord; the Reeders with the right to remain and use, through the year 1873 and up to April 1st, 1874, unless, in due time, a due notice to quit, is given to them by their lessor, or by some one succeeding to his rights.

Sayre then, or soon after, entered into a contract with Tuthill for the purchase of the premises. He had notice of the rights of the Reeders, and so, beyond a doubt, bought, subject to them. Sayre did serve upon the Reeders a notice. There is no particular form requisite in such a notice. If it fully apprise the occupant that the owner wills to determine the occupancy on the day named in it, it is all that reason, or the needs of the case, require. The notice given by Sayre did make known to the Reeders that he required full possession of the lands on the first day of April next after the date of it; which was on the first day of April, 1873. The notice, as a paper, was sufficient in form and substance.

And now comes in the query, whether Sayre, being only the vendee by contract, and not having yet a legal title to the land, could give a notice to quit, which would operate to affect the rights of the Reeders.

It is not so readily to be said what were their rights on and after that day. It is certain that a sufficient notice to quit, given in 1872, would have determined the tenancy from year to year on the first day of April, 1873. Sayre did give notice to quit, sufficient in form and substance, if he had a right to give that notice. But he was not, until after the day last named, the owner of the legal title. Before that he had but an equitable title, which might or might not become a legal title. The notice to quit may be given by anyone legally entitled to give it. (Cole on Eject., 42; Adams on Eject., 87: *Pennington* v. *Cardale*, 3 H. & N., 656.)

The tenant is to act upon the notice at the time it is given; hence it ought to be such a one as he can act upon with

safety. (*Right* v. *Cuthell*, 5 East, 491.) The equitable owner of the title cannot give such a notice, for he may or may not fulfil the contract of sale on his part; or the ven= dor may not convey, and so the tenant may act upon the notice and still find himself bound for the next year's rent to the owner of the legal title.

A notice to quit may be given, either by the landlord or his authorized agent, (*Doe* v. *Browne*, 8 East, 165); or any person legally entitled to the reversion, as assignee, devisee, heir, or executor, or receiver with power to let, but not, if he has only power to receive rents. If it be doubtful in whom the legal estate is vested, all should join in the notice. (*Doe* v. *Chaplin*, 3 Taunt., 120; *Doe* v. *Baker*, 8 id., 241.)

We are therefore of the mind that Sayre, not holding the legal title, could not give an effectual notice to quit, which would be safe for the tenants to rely upon and conform to. It lay in their power to have given to Tuthill a notice to quit, which would have terminated the holding on the first day of April, 1873; but then they would have lost their privilege of a crop of wheat for that and the next calendar year. It is said in 8 Cow. (*supra*), that by purchasing, the vendee stood in the same relation to the tenants as the ven= dor, the lessor, and had the same rights and powers. But in that case, there had been a conveyance of the premises.

But the question then is, was it necessary that the Reeders should have service of notice to quit, ending when the term would have ended by the parol agreement? In England it has been held, that a tenant from year to year, under an agreement for a lease for seven years, which lease was never executed, was not entitled to notice to quit at the end of the seven years, as the contract itself gave him sufficient notice. (*Doe, ex dem. Tilt.* v. *Stratton*, 4 Bing., 446; *Tress* v. *Savage*, 4 Ell. & Bl., 36.)

It has been held in this State, that under a valid lease, which fixed the length and ending of the term, no notice to quit was necessary. (*Allen* v. *Jaquish*, 21 Wend., 628.) I know of no decision expressly holding that the same rule

does not apply to a holding from year to year, begun under a void lease, which named a time for the termination of the tenancy; but see 4 Wend., (*supra*).

But what was the time for the termination of the tenancy in this case? Was it the first day of April, 1873, or was it after the crop of wheat, sowed in 1872, was harvested? We think that it was not until the latter event that the whole interest of the Reeders in the lands terminated. They knew that their right to remain on the farm ceased, so far as the oral agreement gave right, on the first day of April, 1873. A surrender of the premises generally at that time, of itself made no difference in their right to an off-going crop. (9 J. R., *supra*. They also knew that the same agreement gave right to sow and reap a crop of wheat thereafter, and that this was a prolongation of their term. (*Beavan* v. *Delahay*, 1 Hy. Bl., 5; *Boraston* v. *Green*, 16 East, 71.) Under the decisions above cited, they are held to no more than to take note of the time of the termination of their interest in the lands, and to govern themselves accordingly. Their interest in the lands, under an operative and valid lease, would not have ceased entirely until they had harvested and threshed the crop of wheat sowed in 1872. So that we are brought to the conclusion, that they had a right in the lands after the first day of April, 1873, which, while it could have been terminated by a sufficient notice to quit, given by one legally entitled so to do, could not be terminated in any other way. As Tuthill, the owner of the legal title, did not give that notice, the tenancy was not terminated. As for a consideration received by him, he assented to their sowing in the fall of 1872, and recognized their right to do so, he was estopped from denying their right to reap. As Sayre took no rights by his deed, greater than Tuthill had to convey, he could not rightfully interfere with the Reeders in harvesting the wheat and disposing of the grain to their own use. He having done so, without right, is liable to them for its value.

That the judgment was entered for the two surviving

Reeders, without it appearing therein that it was for them as survivors of themselves and the one Reeder who was deceased, is not cause of appeal. It was an irregularity, which should have been taken advantage of by motion. The dismissal of the complaint on the trial, as to the administrators of the deceased Reeder, may have been on the ground that the proof showed a partnership, and not a tenancy in common, or it may not. Tenants in common, must join in an action for the conversion of the joint property. (1 Chitty on Pl., § 64.) Where one or more tenants in common are jointly interested when the injury was committed, the action must be in the name of the survivor or survivors. (Id., § 67).

The trial then proceeded in favor of the other two, as surviving partners, or as surviving tenants in common, and the judgment should have been so entered. It was no error of the court that it was not. It was a clerical irregularity.

It was not error to deny the motion for a nonsuit made after the complaint was dismissed as to the administrators. There are other reasons than that above given. The motion was not put, so far as appears from the appeal-book, upon any specific ground. It was general. In such case, if the objection taken on appeal is one which could have been met at trial, by amendment of pleadings, or further proof to be allowed in the discretion of the court, it will not prevail in a court of review. For it will be presumed that it would have been so obviated. The power of amendment of the pleadings is great under the Code. The real limitation to it seems to be, that the amendment shall not bring in a new cause of action. (Code, § 173.) An amendment, in this case at trial, allowing the plaintiffs to aver their character as surviving partners, instead of tenants in common, would not change the cause of the action. That remained the same, and required no different proof and no additional parties. It needed only that the character, or right in which the plaintiffs sued, should be differently averred. This could have been done at trial. It does not appear that it was done; but as it might have been, it may be done now, *nunc pro tunc.*

(*Lounsbury* v. *Purdy*, 18 N. Y., 515; *Pratt* v. *H. R. R. R. Co.*, 21 N. Y., 305.) And it will be well, when the *remittitur* goes down from this court, that the complaint and the judgment, as entered, be amended so that the character in which the plaintiffs sue and recover should appear upon the judgment roll.

The judgment appealed from should be affirmed.

All concur.

Judgment affirmed.