THE JUNCOS CENTRAL Co., Plaintiff and Appellant, *v.* FERNANDO DEL TORO SALDAÑA, Defendant and Appellee.

No. 4600.   Argued May 1, 1929.—Decided June 23, 1930.

*Henry G. Molina* for appellant.   *Manuel* and *José Martínez Dávila* for appellee.

MR. JUSTICE TEXIDOR delivered the opinion of the Court.

In the present case two causes of action are alleged by

the plaintiff Juncos Central Company, and the following are the essential facts: That the defendant leased to the plaintiff, by a deed executed on April 6, 1922, three rural properties located in Juncos and described in the complaint under letters A, B and C, and named respectively, "El Jobo", "La Lechuga" and "Doña Gregoria", said lease to expire, according to the deed, on August 31, 1925; that the plaintiff's sole business is the growing of canes and the manufacture of sugar and that it had leased the said properties for that purpose; that it is customary in this country to plant the canes between November and March and to harvest the crop from January to June of each year, and that it was so done on the properties leased from the defendant; that during the latter months of 1924 and the first three months of 1925, the plaintiff prepared and cultivated, on two of the properties, "El Jobo" and "La Lechuga," a crop of sugar canes to be harvested in the first months of 1926 and that, in good faith and with the knowledge and consent of the defendant, it prepared and cultivated on the said properties about 214 acres (*cuerdas*) of canes; that since 1911, and by virtue of a contract of lease entered into with the defendant and successively renewed until August 31, 1925, the plaintiff had been in possession of the said properties, and that at the expiration of the lease the defendant brought unlawful detainer proceedings against the plaintiff in the District Court of Humacao and filed a petition for the appointment of a receiver, which was opposed by the plaintiff; and the said petition having been denied, the plaintiff acquiesced in the eviction and demanded, in accordance with the law, the assessment of the growing crop at the time of the lease, which assessment was made by the marshal of the district court and the value of the crop fixed at $24,972 without the intervention of the defendant, who refused to take any part therein; that in planting the said crop the plaintiff acted in good faith. In its second cause of action the plaintiff alleged that the disbursements made by it for seeds, fer-

tilizers, cultivation, and labor amount to $16,712.86. By the first cause of action the plaintiff seeks to recover the sum of $24,972, and by the second the amount of the expenses incurred in preparing the crop.

The defendant in his answer admitted the existence of the contract of lease of the three properties which was to expire on August 31, 1925; it denied, for want of information, that the plaintiff's sole business was the growing of canes and the manufacture of raw sugar and that the leased farms had been leased exclusively for that purpose, and averred that the property called "Doña Gregoria" had been subleased by the plaintiff to the Porto Rican Leaf Tobacco Company and applied to the growing of tobacco and to grazing. He also denied, for want of information, that it was the custom and usage of this country to plant sugar canes from November to March and to grind them from January to June, or that the leased properties had been so planted and cultivated. He admitted that canes had been planted on two of the said properties, but denied for want of information and belief, that the said cane crop had been planted and prepared during the last two months of 1924 and the first three months of 1925. He denied that the plaintiff had planted and cultivated in good faith 214 acres of sugar canes on the said properties, and alleged that the plaintiff knew that it had to surrender the said properties on September 1, 1925, in accordance with the lease, and that every crop planted to be harvested after that date would be so planted with the knowledge that the lease would expire before the commencement of the grinding season; and he also alleged that he had notified the plaintiff prior to August 31 that it should be ready to surrender the leased properties on the date of the expiration of the lease. He admitted as true that the plaintiff had been in possession of the farms, as lessee, since 1911, and that the lease expired on March 1, 1921, and alleged that on April 6, 1922, the plaintiff and the defendant executed a contract of lease for the term of three years and six months,

from March 11, 1922, to September 1, 1925. He further alleged that in the original contract of lease executed in 1911, it was expressly stipulated that, if at the expiration of the lease there were any crops still growing on the land, the contract would be renewed for another year on the same terms, but that in the new lease, executed in 1922, that stipulation was actually excluded and September 1, 1925, set down as the date when the lease should finally expire, it being further stipulated that default in the payment of the rent would be sufficient ground for unlawful detainer proceedings and would bar the lessee from claiming a renewal of the lease by reason of waygoing crops. He admitted having instituted an action of unlawful detainer, which was not opposed by the defendant therein, and that he refused to take any part in the assessment of the growing crop made by the marshal at the request of the said defendant because he contended that such a crop belonged to the lessor; and he denied that the said crop was worth $24,972, and averred that the canes in question were ground in the factory of the plaintiff herein and that, according to the liquidation made by the latter, the proceeds amounted only to $12,400. He also denied that the plaintiff had acted in good faith for the benefit of the properties, and he likewise denied the claim for expenses incurred in the preparation of the said crop. As new matter of defense, he insisted that in the deed of 1911, the first contract of lease, it was agreed that in case there existed any growing crop at the expiration of the lease renewal thereof for one year would be granted to the Juncos Central Co., but that, as there had been a disagreement in regard to that lease, a new lease of the same properties was executed in 1922 fixing September 1, 1925, as the expiration date, because the plaintiff claimed that it would require that time for harvesting the crop corresponding to the first five months of 1925. He finally alleged that the plaintiff had acted in bad faith in growing the said crop, and prayed for a dismissal of the complaint as to both causes of action.

After a trial on the merits, the District Court of San Juan found for the defendant and adjudged the plaintiff to pay the costs. A statement of the case and opinion by the court was filed with the judgment. The principal grounds set out in that opinion are as follows: (a) As to the facts, the finding in regard to the existence of the contract of lease which expired on September 1, 1925, and which contained no stipulation regarding the disposition of the ungathered fruits at the expiration of the contract, but included a provision to the effect that default in the payment of the rent agreed upon would be ground for unlawful detainer proceedings, and that the Juncos Central Company would not be entitled to claim anything by reason of any growing crop; that upon the expiration of the lease the owner of the property brought unlawful detainer proceedings, which were not opposed by the defendant therein, and the properties were surrendered to the then plaintiff, and that there existed at the time on the said properties certain sugar-cane plantations, which were assessed at $24,972 at the instance of plaintiff herein; that the growing crop at the expiration of the lease consisted of ratoons, and that no new planting had been done immediately preceding the expiration of the said lease; that the lessee knew that its contract expired on September 1 and that it could not harvest the canes in time, and that if he sowed the crop, he did so at his own risk. (b) As to matters of law: Section 1468 of the Civil Code of Puerto Rico, which provides that if a lease has been made for a specified time it expires on the day fixed, and the decision in *Toro* v. *Pizá*, 30 P.R.R. 70, and on this point the lower court held that the lease in the present case was for a fixed term; that the situation of the lessee in the case at bar is the same as that of a person who plants or sows on another's land. It also cited the cases of *Nevares Brothers* v. *District Court*, 36 P.R.R. 323; *Yabucoa Sugar Co.* v. *District Court*, 36 P.R.R. 332, and section 371 of the Civil Code of Puerto Rico.

An appeal from the said judgment was taken by the plaintiff, which has assigned three errors in its brief. The first assignment is as follows:

"The court erred in holding that an outgoing tenant is not entitled to reimbursement by the lessor for the expenses incurred in planting the crops growing on the land at the expiration of the contract of lease."

The argument made under this assignment is elaborate and contains a considerable number of citations, including treatises on Roman Law, the Code Napoleon, American, French and Spanish text-writers, and decisions from Spanish and Puerto Rican courts. It is a work worthy of all praise.

Our viewpoint is the same as that held by the district court. The lease herein is one for a fixed term. The fixing of such a term limits the sphere within which the contracting parties can and should act in good faith. Each party knows how far he can go; he has notice of the limits and, if he goes beyond them, he acts at his own risk.

In every lease of things, the definiteness of the term is an essential element. Section 1446 of the Civil Code of Puerto Rico provides:

"Section 1446. In a lease of things, one of the parties thereto binds himself to give to the other the enjoyment or use of a thing for a specified time and at a fixed price."

Certain circumstances, which are specified in other sections of the same code, may influence the determination as to the duration of the lease in particular cases. Thus, according to section 1480 of the said code, the lease of a rural estate, when its duration is not fixed, shall be understood as made for the full time required for the gathering of the fruits which the whole estate leased might produce in one year, or all it could produce at one time; and leases of arable lands divided into tracts cultivated in rotation shall be considered as made for as many years as there are such

tracts. Section 1484 provides for the case of urban leases, and section 1477 prescribes another way of fixing the term.

In the case at bar, the term of the lease was fixed from the moment the deed was signed. As appears from the pleadings and the evidence, the intention as to the fixing of the duration of the lease was clear; the intention to avoid difficulties by reason of the crops.

Having before us a lease for a fixed term, let us consider now the consequences derived from such a specification.

After a lease has terminated, by reason of the expiration of its term, it is undoubtedly the duty of the lessee to surrender the property leased. He has had the use and enjoyment of the property by virtue of a contract of lease, and that contract having expired, such use and enjoyment must cease. The lessee herein was aware of this, and knew that on August 31 or September 1 he must surrender the leased land. If he planted or sowed something to be harvested after that date, can he be heard to claim that he did so in good faith? We think not. Whatever the force of the presumption of good faith, the inference to be drawn from the notice as to the duration of the term and from the planting of a crop to be harvested after the expiration of such term is that bad faith existed; and this is the inference to be drawn by any court, as was done by the district court in the present case.

We have been cited to a decision of the Supreme Court of Spain dated September 30, 1900. There is no doubt that it was declared by the court in that decision that the tenant must abstain from doing any cultivation work of which he can not avail himself. In the case cited the lease, wherein one Rama was the lessee, had expired and the tenant had to surrender the property on the 15th of August, 1896. Notwithstanding this, he planted and grew potatoes, barley, chick peas, etc. Upon his eviction, he claimed the growing crops on the land together with tillage expenses and the manure. In deciding the case, said Supreme Court declared,

in addition to what has already been stated, that inasmuch as Rama had placed himself in the position of a tenant who, after receiving a notice to quit, plants and cultivates a crop notwithstanding such notice, he must be held, under section 443 of the Spanish Civil Code, to have acted in bad faith; and that, according to section 372 of the Civil Code, he who plants or sows in bad faith on another's land is not entitled to compensation. The identical provision is found in section 371 of our Civil Code, which reads as follows:

"He who builds, plants, or sows in bad faith on another's land, loses what he has built, planted, or sown, without having any right to indemnity."

Under the law in this jurisdiction, a clear and precise solution of the question raised here is available. Unjust enrichment, of course, is not to be countenanced; but if a person who builds, plants, or sows in bad faith on another's land could recover the expenses maliciously incurred by him to the prejudice of the owner, then he probably would be the one to unjustly enrich himself. The owner is innocent or ignorant of the fact that any sowing or planting has been done on his property. Why impose on him the burden of paying the expenses so incurred by another, with knowledge that he was not the owner of the land and that he could not harvest the crop?

In another judgment dated July 3, 1902, the Supreme Court of Spain said:

"The right to gather the fruits corresponding to the current agricultural year is conferred by section 1571 of the Civil Code on the lessee in good faith in case of his eviction by the purchaser of the leased estate, but not upon a person who plants or sows without being entitled thereto and who knows that he has no right to do it."

In 8 R.C.L. 363, it is said:

"The common law rule is that where the renting is for a time certain the tenant is not entitled to such crops, because, if it is certain at the time when he sows, how long the tenancy will continue,

and it is plain that before it ceases he cannot reap that which he may sow, then it is his own folly if he sows.''

In *Reeder* v. *Sayre,* 70 N. Y. 180, 26 Am. Rep. 567, that doctrine was stated in the following terms:

"It is true that a tenant holding by a tenure which is uncertain as to the time at which it will cease, is entitled to take off, after it has ceased, the crops which he has sowed in the due course of husbandry. But if it is certain at the time when he sows, how long it will continue, and it is plain that he cannot, before it ceases, reap that which he may sow, then it is his own folly if he sows (Per Ld. Mansfield, Wigglesworth v. Dallison, 1 Doug. 201), and he will not be permitted to reap. This rule does not give to the tenant any right by reason of his having ploughed, manured or otherwise prepared the ground for the seed, if he has not sowed. See Stewart v. Doughty, 9 Johns., supra; Kingsbury v. Collins, 4 Bing. 202; Bain v. Clark, 10 Johns., 424. We think that it matters not how it is made certain when an uncertain term will cease. It may be by the death of one for whose life the lands are held, or it may be by the giving of a sufficient notice to quit by one entitled to give it. A notice to quit terminates the tenancy on the day the notice expires. Riggs v. Bell, 5 T. R. 471.''

In the case before us we note that the first contract of lease (Tr. of Ev., pp. 151–162) contains a stipulation under letter "J", which provides that, if at the time the lease terminates, there should exist growing crops the lease shall be renewed for another year under the same terms. On the other hand, in the contract of lease made on April 6, 1922, the duration of the lease was fixed at three years and six months, which term expired on September 1, 1925, and stipulation "J" of the former contract was eliminated. This elimination was effected by the will of the parties, who did not wish to carry over this stipulation into the new contract.

If the lessee incurred any expenditures for the preparation of a crop, which it knew it could not harvest in view of the duration of the lease, it can not allege good faith in making such disbursements. Its status is that of a person who sows, plants, or builds in bad faith, and who is penalized under section 371 of the Civil Code as follows:

" . . . loses what he has built, planted or sown, without having any right to indemnity."

The foregoing reasons are sufficient for holding that the first error assigned does not exist.

The second assignment of error reads as follows:

"The court erred in excluding all evidence regarding the custom of the town (Juncos) as to the right of an outgoing tenant to harvest growing crops."

At the trial the plaintiff offered to introduce evidence as follows:

"By the testimony of this and two other witnesses, who are informed in this respect by reason of their many years of experience in the cane business and especially in the Juncos district, the plaintiff wishes to prove the existence of the following custom in that district: At the termination of a lease of rural estates, which are used for the planting and growing of canes, any growing crop to be harvested the following year either has its value assessed at the time of surrendering the property and credited to the person who planted and cultivated the same, or is harvested at the next grinding season and the proceeds thereof credited to the outgoing tenant. Of course, the lease covers such part of the property as is occupied by the growing crop, and to that effect I offer in evidence a letter where we proposed to Mr. Toro to surrender the property and to continue in possession of the land so planted, for the purpose of harvesting the canes."

The court refused to admit such evidence and, in our opinion, on justifiable grounds.

It has been a long time since custom lost the great importance which it formerly had as a source of law. To dispel all doubt in the matter, section 5 of the Civil Code has been enacted as follows:

"Laws shall only be repealed by means of subsequent laws; and disuse, custom or practice to the contrary shall not impede their enforcement."

This, of course, precludes the invoking of a custom as against a statute. Where the law has meant to make custom binding, it has so provided in an open and clear manner.

Thus, section 485 of the Civil Code gives sanction to the custom of the locality in a particular case and restrictively. The same may be said regarding other sections of the cited code, as for instance sections 577 and 1399; and with respect to leases, subdivision 2 of section 1458, which refers to the use of the thing leased; section 1477, regarding the place and time of payment of the rent in the absence of a stipulation thereon; section 1481, in reference to the respective rights and obligations of an outgoing and an incoming tenant; and various other provisions which it is unnecessary to mention here.

In its argument, the appellant discusses the effect of section 1481 of our Civil Code and invokes the commentaries of Manresa on the corresponding section (1578) of the Spanish Civil Code. We think that there is some mistake in this. Section 1481 of our Civil Code does not regulate any relationship between the landlord and his former tenant. The text of the law is clear: ''The outgoing lessee must permit the incoming one, etc.'' The relation involved is that existing between two lessees, and we must not stretch it beyond the limits set out for it by the legislator. In considering the first assignment of error, we have dealt with the statutory provisions and the jurisprudence governing the relation of landlord and tenant.

We find that the case of *Molina* v. *Muñoz,* 31 Fed. (2d) 727, is not similar to the case at bar. In the first place, there were involved in the cited Federal case the rights of an intervener, Molina, who acquired his credit and thereafter offered to pay the accrued rent for the purpose of enforcing his claim against the growing crop. The lease in *Molina* v. *Muñoz, supra,* was terminated by the eviction for non-payment of rent in a manner which we might term by operation of law, although unexpected and involuntary. In the case at bar, on the contrary, the date of the expiration of the lease was fixed from the start, and it was known that such expiration must necessarily take place on the 1st of

September, 1925. In such a case, the person who plants for harvesting after the expiration date, without any agreement or stipulation entitling him to harvest the crop so planted, may be considered as a person who plants in bad faith according to the code. Apart from this, and as appears from the opinion of the court below, there are involved in the present case ratoons, that is, canes of a second or third year's growth which produce crops to be harvested in subsequent years. We also notice that in the case of *Molina* v. *Muñoz, supra,* the statute applied was the special Act on agricultural loans of 1910, which served to dispose of the controversy involved, and logically so, as the case came within the scope of that act.

The second error assigned is without merit.

The third assignment of error refers to the imposition of costs on the plaintiff. The use made by the judge of his discretion on this point was entirely justified. The fact that the court should have devoted considerable study to the case does not mean that the plaintiff was justified in bringing the action. The questions involved are not novel in any system of law.

The judgment appealed from must be affirmed.

Mr. Justice Hutchison dissented.