THE JUNCOS CENTRAL Co., demandante y apelante, *v.* FERNANDO DEL TORO SALDAÑA, demandado y apelado.

No. 4600.—*Sometido:* Mayo 1, 1929.—*Resuelto:* Junio 23, 1930.

184

*Henry G. Molina,* abogado de la apelante; *Manuel y José Martínez Dávila,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

Dos causas de acción se ejercitan por la demandante Juncos Central Co. en este caso, sobre las alegaciones esenciales siguientes: que por virtud de una escritura de 6 de abril de 1922 la corporación demandante tomó en arrendamiento al demandado tres fincas rústicas situadas en Juncos y que en la demanda se describen bajo las letras A, B y C, llamadas, respectivamente, "El Jobo," "La Lechuga" y "Doña Gregoria," y que el contrato de arrendamiento, según la misma escritura, terminaba el 31 de agosto de 1925; que la demandante tiene por único negocio la siembra de caña de azúcar y la fabricación de azúcar de caña y para ese fin había arrendado las fincas; que es costumbre del país que la siembra de caña de azúcar se efectúe en un período de noviembre a marzo para recolección de enero a junio de cada año y así lo era en las fincas arrendadas al demandado; que en dos de ellas, El Jobo y La Lechuga, la

demandante durante los meses finales de 1924 y los tres primeros de 1925 cultivó y preparó una cosecha de cañas de azúcar para ser beneficiada en los primeros meses de 1926 y que de buena fe y con conocimiento y consentimiento del demandado la demandante preparó y cultivó en tales fincas alrededor de 214 cuerdas de caña; que la demandante desde 1911 y por virtud de un contrato de arrendamiento con el demandado, cuyo contrato fué prorrogado sucesivamente hasta 31 de agosto de 1925, se hallaba en posesión de tales fincas y que al terminar tal contrato el demandado entabló desahucio contra la demandante en la Corte de Distrito de Humacao solicitando también nombramiento de síndico, a lo que se opuso la demandante y una vez resuelto no haber lugar a tal nombramiento la demandante se allanó al desahucio exigiendo, de acuerdo con la ley, el avalúo de las plantaciones en el momento del arrendamiento, realizándose tal avalúo por el márshal de la corte de distrito y fijando el valor de los frutos en $24,972, y habiéndose negado el demandado a intervenir en la valoración; que la demandante en la preparación de tal cosecha actuó de buena fe. Y en cuanto a la segunda causa de acción añade que los gastos de la demandante en la preparación de tal cosecha fueron $16,712.86 en semilla, abono, cultivo y trabajo. En la primera causa de acción solicita se le pague el valor de $24,972, y en la segunda el importe de los gastos de preparación de la cosecha.

Al contestar el demandado aceptó la existencia del contrato de arrendamiento de las tres fincas a terminar el 31 de agosto de 1925, negó por falta de información que la demandante se dedicara exclusivamente al negocio de cañas de azúcar y manufactura de azúcares crudos y que las fincas arrendadas lo fueran exclusivamente para ese negocio y alegó que la finca Doña Gregoria estaba subarrendada por la demandante a la Porto Rican Leaf Tobacco Co. y dedicada a siembra de tabaco y pastos; y parte de la finca A (El Jobo) destinada a pastos. Negó también por falta de información

que fuera la costumbre y uso del país que la siembra de cañas de azúcar se efectuara en noviembre a marzo para ser recolectadas de enero a junio y que así lo fueran las sembradas y cultivadas en las fincas objeto del arrendamiento; admitió que en dos de dichas fincas existía plantación de caña pero por falta de información y creencia negó que ésta fuera cultivada y preparada en los dos meses finales de 1924 y los tres primeros de 1925; negó que la demandante preparara y cultivara de buena fe 214 cuerdas de cañas de azúcar en las propiedades citadas y alegó que la demandante sabía que tenía que entregar las referidas fincas el primero de septiembre de 1925 según la escritura de arrendamiento y que toda siembra o cultivo que se efectuara para ser recolectado después de esa fecha la hacía a sabiendas de que el contrato vencía antes de la recolección y alegó también haber notificado a la demandante con anterioridad al 31 de agosto que debía estar preparada para entregar las fincas arrendadas el día del vencimiento; admitió ser cierto que la demandante estuvo en posesión de las fincas, por arrendamiento, desde 1911, contrato que venció el primero de marzo de 1921 y alegó que en 6 de abril de 1922 celebraron la demandante y demandado un nuevo contrato de arrendamiento en el cual se estipuló que la duración del mismo sería de tres años seis meses a contar del 11 de marzo de 1922, terminando el primero de septiembre de 1925; alegó asimismo que en la primera escritura de arrendamiento, la de 1911, se hizo constar expresamente que si al terminar tal arrendamiento hubiera plantaciones pendientes de cosecho se prorrogaría el contrato por un año más bajo las mismas condiciones y alegó que en el nuevo contrato de arrendamiento, el de 1922, se excluyó expresamente ese convenio y se señaló como fecha definitiva de expiración del contrato el primero de septiembre de 1925, haciéndose, además, constar que la falta de pago del canon sería suficiente para el desahucio y sin derecho la arrendataria a reclamar prórroga por razón de plantaciones existentes; admitió haber entablado

acción de desahucio, a la que se allanó la demandada, negándose el demandante a intervenir en la valoración de los frutos pendientes que se hacía por el márshal a petición de la demandada por entender que esos frutos pertenecían al arrendador y negó el valor de $24,972 que se dió a los frutos alegando que las cañas de que se trata fueron molidas en la factoría de la demandante y según liquidación de la misma sólo produjeron $12,400, que era su valor; negó que la demandante actuara de buena fe en beneficio de las fincas, en la preparación y cultivo de las cañas en tales fincas; negó asimismo la cuantía de los gastos en la preparación de tal cosecha. Como materia nueva de oposición insistió en que en la escritura de 1911, primera de arrendamiento, se hizo constar un convenio para en el caso de que existieran plantaciones pendientes de cosecha al terminar tal arriendo, y por el cual se concedería un año de prórroga a la Juncos Central Co., y alegó que habiendo surgido desavenencia sobre dicho arrendamiento se celebró en 1922 un nuevo contrato de arrendamiento sobre las mismas fincas en el que se fijó el vencimiento el día primero de septiembre de 1925 por haber alegado la demandante que le era necesaria esa fecha para poder recolectar las cosechas de los cinco primeros meses de 1925; alegó la mala fe de la demandante en tal cultivo, y pidió se declarara la demanda sin lugar en ambas causas de acción.

Se siguió el procedimiento en forma, y oído el pleito, la Corte de Distrito de San Juan, dictó sentencia declarando sin lugar la demanda y condenando a la demandante en costas. A la sentencia se une la relación del caso y opinión de la corte. Fundamentos principales de su opinión son: (a) En materia de hecho la declaración de la existencia del arrendamiento por un término que expiró el 1 de septiembre de 1925, y sin que en la escritura se consigne nada en cuanto a la disposición de los frutos pendientes al terminar el contrato, y sí una cláusula en la que se expresa que si dejara de pagarse el canon convenido ello sería causa de desahucio,

sin que la Juncos Central Co. tuviera derecho a reclamación alguna por las plantaciones que existan; que vencido el arrendamiento, el propietario entabló el desahucio, a que se allanó la demandada, y se entregaron las fincas al demandante, y que en ella existían plantaciones de caña que se tasaron en $24,972, por gestión de la aquí demandante; que los frutos pendientes al vencimiento del arrendamiento eran cañas de segundo o tercer corte, y que no hubo siembra nueva inmediatamente antes de vencerse el contrato; que el arrendatario sabía que su contrato terminaba en 1 de septiembre, y que no podía recolectar la caña, y si sembró lo hizo a su riesgo. (b) Como fundamento de ley: el artículo 1468 del Código Civil de Puerto Rico, que establece que el arrendamiento o plazo fijo termina en el día fijado, y con él la decisión en el caso *Toro* v. *Pizá,* 30 D.P.R. 75, y sobre este extremo la corte declara que el del caso es un arrendamiento a plazo fijo; que la posición del arrendatario en este caso es la del que siembra en terreno ajeno; cita los casos *Nevares Hermanos* v. *Corte de Distrito,* 36 D.P.R. 357, y *Yabucoa Sugar Co.* v. *Corte de Distrito,* 36 D.P.R. 368; y el artículo 371 del Código Civil de Puerto Rico.

Contra esta sentencia se interpuso apelación por parte de la demandante, que en su alegato presenta tres señalamientos de error. El primero es como sigue:

"La corte erró al resolver que un arrendatario saliente no tiene derecho a recibir del arrendador los gastos hechos en los frutos pendientes de recolección que queden en la finca al vencer el contrato de arrendamiento."

Se argumenta este señalamiento de error con gran acopio de autoridades, textos de derecho romano, Código de Napoleón, tratadistas americanos, franceses, y españoles, y sentencias de España y Puerto Rico; es un trabajo digno de todo elogio.

A nuestro juicio, el punto de partida es el mismo que fijó la corte de distrito. Este es un arrendamiento a término

fijo; por virtud de la fijación del término, se produce la de las esferas de acción en que pueden y deben moverse, de buena fe, las partes en el contrato; por esa fijación de término, cada parte sabe hasta dónde puede ir; conoce sus límites, y al traspasarlos, lo hace a su riesgo.

En el arrendamiento de cosas la característica de determinación de tiempo, es esencial. Así el artículo 1446 del Código Civil de Puerto Rico, dice:

"Artículo 1446.—En el arrendamiento de cosas, una de las partes se obliga a dar a la otra el goce o uso de una cosa por tiempo determinado y precio cierto."

En la determinación del tiempo pueden influir circunstancias diversas que se anotan en diversos artículos del mismo código. Y así el artículo 1480, ley citada, establece que en los arrendamientos de predios rústicos, cuando no se fija su duración, se entienden hechos por el tiempo necesario para la recolección de frutos que la finca diere en un año, o por una vez; y en los de tierras labrantías, divididas en hojas, tantos años como hojas fueren. Y en el artículo 1484, se establece el caso de arrendamiento de urbanas; y el 1477, presenta otra forma de fijar el término.

En este caso el contrato tiene un término fijado desde que se firmó la escritura. Y por lo que aparece de las alegaciones y de la prueba, responde el término a una intención clara; la de no encontrar inconvenientes por razón de la cosecha.

Teniendo un contrato a término fijo, conviene ver aquí las consecuencias de ese término.

Extinguido el arrendamiento, por vencerse el término, no es dudoso que el deber del arrendatario es entregar la finca. El la usaba y la disfrutaba por virtud del contrato; cesó éste, y cesan el uso y el disfrute. El arrendatario sabe esto; sabe que al llegar el día 31 de agosto, o el 1 de septiembre, tiene que entregar la finca. ¿Puede sostener, si siembra algo que ha de cosechar después de esa fecha, que lo

hizo de buena fe? Entendemos que no; cualquiera que sea la fuerza de la presunción de buena fe, la inferencia que en un caso como ése nace del conocimiento del término y del hecho de sembrar para cosechar después del término, es la de mala fe; y esta inferencia es la que corresponde hacer a los tribunales, como lo hizo aquí la corte de distrito.

Se nos ha citado la sentencia del Tribunal Supremo de España, de 30 de noviembre de 1900. Es indudable que el Tribunal Supremo español declaró allí que el colono debe abstenerse de las labores correspondientes a cosechas de que ya no puede aprovecharse. En el caso que allí se resolvió el arrendatario Rama tenía su contrato vencido, y debía desalojar la finca el 15 de agosto de 1896; eso no obstante sembró y cultivó patatas, cebada, garbanzos, etc.; cuando se le desahució, quedaron en la finca los frutos, que él reclamó, como también los barbechos y el estiércol. Al decidir el Tribunal Supremo el caso, aparte de lo antes citado, dijo que, colocado Rama en la situación de colono despedido, que, no obstante siembra y cultiva, se resolvía, de acuerdo con el artículo 433 del Código Civil español, que obró de mala fe; y con arreglo al artículo 362 del mismo código, el que planta o siembra, de mala fe, en terreno ajeno, no tiene derecho a indemnización.

El precepto es el mismo en el artículo 371 de nuestro Código Civil, que es así:

"El que edifica, planta o siembra de mala fe en terreno ajeno pierde lo edificado, plantado o sembrado sin derecho a indemnización."

En nuestra ley es terminante y clara la solución. En verdad que no puede protegerse el enriquecimiento torticero; pero si el que edifica, planta o siembra de mala fe en terreno ajeno pudiera recobrar los gastos que maliciosamente hizo, en daño del propietario, quizá fuera él el que se enriqueciera torticeramente. El propietario está en inocencia o en ignorancia de que se ha sembrado o cultivado en su finca. ¿Por

qué imponerle que pague los gastos que otro hizo a sabiendas de que no era suyo el terreno, y de que no podía percibir la cosecha?

En otra sentencia del Tribunal Supremo de España, la de 3 de Julio de 1902, se ha dicho:

"El derecho de recoger los frutos del año agrícola corriente, lo confiere el artículo 1571 del Código Civil al arrendatario de buena fe en el caso de ser éste desahuciado por el comprador, y no al que siembra sin título alguno y sabiendo que no puede hacerlo."

De 8 R.C.L. 363, anotamos:

"La regla de la ley común es que cuando el arrendamiento es por un término fijo, el arrendatario no tiene derecho a tales cosechas, porque si sabe ciertamente al tiempo en que siembra el término que ha de durar su tenencia, y es claro que antes de que ella cese no puede cosechar lo que siembra, entonces es su propia torpeza el sembrar."

En el caso *Reeder* v. *Sayre*, 70 N. Y. 180, 26 Am. Rep. 567, se declaró esta doctrina en las siguientes palabras:

"Es cierto que un arrendatario que posee a virtud de un contrato que es impreciso en lo que al tiempo en que ha de expirar se refiere, tiene derecho a recolectar, después de haber vencido el contrato, la cosecha que ha sembrado en el curso ordinario de la labranza. Pero si al tiempo en que siembra la semilla sabe con certeza la fecha del vencimiento, y es manifiesto que no puede antes de vencer el contrato cosechar lo que ha sembrado, entonces siembra a su propio riesgo (Per Ld. Mansfield, Wigglesworth v. Dallison, 1 Doug. 201), y no se le permitirá recolectar los frutos. Esta regla no concede al arrendatario derecho alguno por haber arado, abonado o preparado el terreno en alguna otra forma para la semilla, si no ha sembrado. Véase Stewart v. Doughty, 9 Johns, supra; Kingsbury v. Collins, 4 Bing. 202; Bain v. Clerk, 10 Johns, 424. Creemos que no importa la forma en que se determine cuándo vencerá un término incierto. Puede ser por la muerte de la persona por cuya vida se poseen los bienes, o tal vez al darse suficiente aviso de que se desaloje la finca, por la persona con derecho a hacerlo. Un aviso para que se desaloje una finca da fin al arrendamiento en el día en que expira el aviso. Riggs v. Bell. 5 T. R. 471."

Observamos en este caso que en la **primera escritura de**

arrendamiento, página 151 a 162 de la transcripción de evidencia, existe una cláusula J que prevé que si al término definitivo del arrendamiento hubiera plantaciones pendientes de cosecha se prorrogará el arriendo por un año más, bajo las mismas condiciones estipuladas. En cambio, en la escritura de arrendamiento de 6 de abril de 1922, se fija el término en tres años seis meses, que vencen el 1 de septiembre de 1925, y no se contiene cláusula alguna como la antes citada, J del primer contrato. Esta supresión fué la obra de la voluntad de las partes otorgantes, que no quisieron conservar en el contrato aquel derecho.

Si la arrendataria hizo gastos para un cultivo y una cosecha que sabía que no podía recoger, porque el término del contrato se lo impedía, los hizo sin que pueda alegar la buena fe. Su posición es la del que siembra, planta o edifica de mala fe, a quien el artículo 371 del Código Civil, castiga en estas palabras:

"... pierde lo edificado, plantado o sembrado sin derecho a indemnización."

Estas razones son suficientes para declarar que no existe el error señalado bajo el número primero en el alegato.

■ En lo que toca al error bajo el número segundo, se enuncia así:

"La corte erró al excluir toda la evidencia con arreglo a la costumbre del pueblo (Juncos) con respecto al aprovechamiento de los frutos por un arrendatario saliente."

La parte demandante hizo en el juicio un ofrecimiento de prueba en la siguiente forma:

"La parte demandante desea probar con este testigo y con dos testigos más, que tienen conocimiento sobre el particular por los numerosos años que se han dedicado al negocio de cañas y especialmente en el distrito de Juncos, y que en esa región existe la costumbre siguiente: Al vencer un contrato de arrendamiento de fincas rústicas que se dedican a la siembra y cultivo de cañas, la cosecha que se encuentra en la finca para el año subsiguiente es o bien tasado y de-

terminado su valor en el momento de entregar, y ese valor abonado al que la sembró y cultivó, o bien, se cosecha en el próximo año o cosecha azucarera y el valor de esos frutos se abona al arrendatario o saliente, desde luego, el arrendamiento corresponde a la parte de la finca ocupada por la cosecha, y a ese efecto voy a ofrecer en evidencia una carta donde ofrecemos al señor del Toro entregar la finca y quedar en posesión de la propiedad para cosechar las cañas.''

La corte denegó la admisión de esa prueba, a nuestro entender, con razón suficiente.

Hace ya mucho tiempo que la costumbre ha perdido la gran importancia que tenía como una de las fuentes de derecho. Para disipar toda duda en la materia se ha escrito el artículo 5 del Código Civil:

''Las leyes sólo se derogan por otras leyes posteriores; y no prevalecerá contra su observancia el desuso, la costumbre, o la práctica en contrario.''

Esto, desde luego, impide la posibilidad de invocar una costumbre en contra de la ley. Y en los casos en que la ley quiere dar fuerza a la costumbre, lo hace de una manera franca y clara. Y así, en el artículo 485 del Código Civil, da paso a la costumbre o uso del lugar, en un caso específico, y de manera restringida; y lo mismo puede decirse de otros artículos del mismo código, como el 577, el 1399, y en el arrendamiento, el número 2 del artículo 1458, en cuanto al uso de la finca arrendada, el artículo 1477, en cuanto al lugar y tiempo del pago, a falta de pacto, el 1481 en cuanto a los derechos y deberes de los arrendatarios saliente y entrante; y algunos preceptos más que no es necesario mencionar ahora.

Se argumenta acerca de los efectos del artículo 1481 de nuestro Código Civil, y se usa el comentario de Manresa en cuanto al 1578 del Código Civil Español. Creemos que hay un error en esto. Este artículo 1481 de nuestro Código Civil no rige relaciones entre el propietario y el que fué arrendatario. El texto de la ley es claro: *''el arrendatario saliente debe permitir al entrante.''* La relación es entre dos arrendatarios; y no debemos extenderla más allá de lo que

la extendió el legislador. Al estudiar el primer señalamiento de error, hemos tratado de los preceptos de ley, y de la jurisprudencia, que rigen entre el propietario y el arrendatario.

Encontramos que el caso *Molina* v. *Muñoz*, 31 Fed. (2d) 727, no es igual al presente. En primer lugar en este caso federal se discuten los derechos de un tercero, Molina, que adquirió su crédito y luego ofreció el pago de los cánones adeudados con el objeto de recobrar su crédito sobre la cosecha pendiente. El arrendamiento en este caso *Molina* v. *Muñoz* se disuelve por el desahucio por falta de pago que pudiéramos decir de una manera judicial pero inesperada o involuntaria. En el caso presente, por el contrario, la fecha de expiración del contrato se halla fijada desde el primer momento y se sabe que ha de expirar forzosamente el día 1 de septiembre de 1925. Y en este caso el que siembra para recoger cosecha después de esa fecha y sin tener pacto alguno de prórroga o pacto alguno para hacer suya tal cosecha, tiene el carácter de sembrador de mala fe con arreglo al código. Aparte de eso en este caso concreto se trata, según aparece de la opinión, de plantaciones de caña de segundo y tercer corte, esto es, de plantaciones cuyo primer cosecho ha sido ya recolectado y cuyo segundo y tercer corte producen cosechas para años posteriores. Notamos, además, que en el caso *Molina* v. *Muñoz* la ley que se interpreta es la especial de préstamos agrícolas de 1910, con la que nos parece que se decide toda la cuestión pendiente, lo que es perfectamente lógico ya que el caso se encuentra bajo esa ley.

No existe el segundo error señalado.

Como tercer error se señala la imposición de costas a la demandante. La discreción del juez en esta materia fué ejercitada en sentido que tiene completa justificación. El que la corte haya tenido que hacer detenido estudio del caso, no significa que la demandante tuviera justificación al entablar

su demanda; las cuestiones no son nuevas en ningún sistema de derecho.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Señor Hutchison disintió.